**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF PIERRE LOURY, | ) | |
| Deceased, by Tambrasha Hudson, | ) | |
| Administrator, | ) | No. 16 C 04452 |
| | ) | |
| Plaintiff, | ) | Judge Amy J. St. Eve |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | |
| Officers SEAN HITZ (Star No. 6272) | ) | |
| and JEFF J. RIORDAN (Star No. 7716), | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO**
**PLAINTIFF'S SECOND AMENDED COMPLAINT, JURY DEMAND,**
**12(b)(6) DEFENSES, AND AFFIRMATIVE DEFENSES**

Defendant City of Chicago ("the City"), by and through its attorney, Stephen R. Patton,

Corporation Counsel for the City of Chicago, for its Answer to Plaintiff's Second Amended

Complaint, jury demand, 12(b)(6) defenses and affirmative defenses, states as follows:

**Introduction**

1. This is a civil rights action. On April 11, 2016, Pierre Loury, a 16-year-old Black
teenager, lost his life. Chicago Police Officers shot him without lawful justification. When he
was shot, Pierre Loury presented no threat to the Defendant Officers or to anyone else.

**ANSWER**:    The City admits this is a civil rights action.  On information and belief, the City

admits that on April 11, 2016, Pierre Loury was a 16 year old Black teenager and that Defendant

Sean Hitz shot Pierre Loury.  The City denies the remaining allegations contained in this

paragraph.

2. The Chicago "police have no regard for the sanctity of life when it comes to people of

1

color." [1]  The unconstitutional policies and practices of the Chicago Police Department result in the unjustified deaths of people of color, including Pierre.  The City of Chicago is therefore also liable for his death.

**ANSWER**:    The City admits that on page 7 of its April 2016 report, the Police Accountability

Task Force states, "CPD's own data gives validity to the widely held belief the police have no

regard for the sanctity of life when it comes to people of color." The City denies the remaining

allegations contained in this paragraph.

### Jurisdiction and Venue

3.   The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States.

**ANSWER**:    The City admits that jurisdiction is proper.

4.   Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiff's claims also occurred in this judicial district.

**ANSWER**:    The City admits that venue is proper, but denies the events occurred as alleged in

this Complaint.

### Parties

5.   Tambrasha Hudson was appointed Administrator of the Estate of Pierre Loury, deceased, by the Probate Division of the Circuit Court of Cook County, Illinois.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in this paragraph.

6.   Tambrasha Hudson is a resident of Cook County, Illinois, and is the mother of Pierre Loury.

**ANSWER**:    The City admits the allegations contained in this paragraph.

---

[1] Police Accountability Task Force. "(Executive Summary) Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities they Serve," p. 8 (April 2016) [https://chicagopatf.org/wpcontent/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf; https://chicagopatf.org/wpcontent/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf]

7.  Defendant Sean Hitz was, at all times relevant to the allegations made in this complaint a duly appointed police officer employed by the City of Chicago, acting within the scope of his employment with the City of Chicago and under the color of state law. He is sued in his individual capacity.

**ANSWER**:     The City admits the allegations contained in this paragraph.

8.  Defendant Jeff J. Riordan was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Chicago, acting within the scope of his employment with the City of Chicago and under the color of state law. He is sued in his individual capacity.

**ANSWER**:     The City admits the allegations contained in this paragraph.

9.  Defendant City of Chicago, a municipality duly incorporated under the laws of the State of Illinois, is the employer and principal of Defendant Sean Hitz and Defendant Jeff J. Riordan. The City is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board.

**ANSWER**:     The City admits that it is a municipality duly incorporated under the laws of the State of Illinois and the employer and principal of Defendant Sean Hitz and Defendant Jeff J. Riordan.  The allegation that the City is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board, is an incomplete and/or inaccurate statement of the law, therefore, the City denies the allegation.

**Facts**

10.  On April 11, 2016 at approximately 7:40 p.m., Pierre Loury was in an automobile being operated on the 3400 block of West Grenshaw Street, Chicago, when Defendant Sean Hitz and Defendant Jeff J. Riordan approached him.

**ANSWER**:     Upon information and belief, the City admits that on April 11, 2016 at approximately 7:40 p.m., Pierre Loury was in an automobile, but denies the remaining allegations contained in this paragraph.

11.  Pierre got out of the automobile and ran from Defendant Sean Hitz and Defendant Jeff J. Riordan.

**ANSWER**:    Upon information and belief, the City admits the allegations contained in this paragraph.

12. Defendant Sean Hitz and Defendant Jeff J. Riordan pursued Pierre on foot.

**ANSWER**:    Upon information and belief, the City admits Defendant Hitz pursued Pierre on foot, but denies the remaining allegations contained in this paragraph.

13. Pierre reached a fence and, as he began to climb over it, Defendant Sean Hitz, without cause or provocation, shot at him, striking him in the torso and killing him.

**ANSWER**:    Upon information and belief, the City admits Pierre reached a fence, but deny the remaining allegations contained in this paragraph.

14. Defendant Jeff J. Riordan, being present, had the duty and opportunity to intervene to protect Pierre, but Defendant Jeff J. Riordan did nothing to assist Pierre or prevent the shooting.

**ANSWER**:    The City denies the allegations contained in this paragraph.

15. Defendant Sean Hitz and Defendant Jeff J. Riordan, jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give a false, incomplete, and misleading versions of the events to their superiors and to the public. In order to cover up their misconduct, they falsely claimed that Pierre placed them in imminent fear of bodily harm.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in this paragraph.

16. The actions of the Defendants and their named and unnamed co-conspirators, as alleged in this complaint, were done jointly, in concert, and with shared intent and, therefore, constitute a continuing civil conspiracy under 42 U.S.C. § 1983.

**ANSWER**:    The City denies the allegations contained in this paragraph.

**Count I**
**42  U.S.C. § 1983 Claim for Unconstitutional Seizure**

17. Plaintiff repeats and realleges paragraphs 1-16, as if they were fully set out in this Count.

4

**ANSWER**:    The City repeats and re-incorporates its answers to Paragraphs 1-16 of this Complaint as though set forth fully herein.

18. The actions of Defendant Sean Hitz and Defendant Jeff J. Riordan in chasing Pierre Loury and shooting him with a firearm without just cause and/or failing to intervene to prevent this shooting, despite their having the opportunity to do so, violated Pierre's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

**ANSWER**:    The City denies the allegations contained in this paragraph.

19. The actions of Defendant Sean Hitz and Defendant Jeff J. Riordan as alleged in this Count 1 of the complaint were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiffs injuries.

**ANSWER**:    The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

### Count 2
### 42 U.S.C. § 1983 Monell Policy Claim Against Defendant City of Chicago

20. Plaintiff repeats and realleges paragraphs 1-19, as if they were fully set out in this Count.

**ANSWER**:    The City repeats and re-incorporates its answers to paragraphs 1-19, as if they were fully set forth herein.

21. The actions of Defendant Sean Hitz and Defendant Jeff J. Riordan as alleged in this complaint were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Chicago, its police department, Police Board, Independent Police Review Authority (I.P.R.A.), Internal Affairs Division of the Chicago Police Department (I.A.D.), Personnel Division, and/or Superintendents.

5

**ANSWER**:     The City denies the allegations contained in this paragraph.

22. At all times material to the allegations contained in this complaint, the Defendant City of Chicago and its police department, Superintendents, I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated de facto policies, practices, and customs which included, among other things:

> a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force, including unjustified shootings;
> b) the police code of silence;
> c) the encouragement of excessive and unreasonable force;
> d) the failure to properly investigate shootings of civilians, particularly young Black men, by Chicago police officers;
> e) the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings; and/or
> f) the failure to properly train and supervise Chicago police officers with regard to discharging their weapons at civilians, particularly at young Black men.

**ANSWER**:     The City denies the allegations contained in this paragraph.

23. In December 2015, in the wake of a thirteen month delay in the release of video which contradicts the false, misleading, incomplete account given by the Chicago Police Department of the shooting death of Laquan McDonald, another African American teenager, Mayor of the City of Chicago, Rahm Emanuel ("Mayor Emanuel"), appointed members to The Police Accountability Task Force.

**ANSWER**:     The City admits that in December 2015, Mayor Emanuel began appointing members to the Police Accountability Task Force. The City denies the remaining allegations contained in this paragraph.

24. On December 9, 2015, Mayor Emanuel speaking on the City of Chicago Council floor said:

"We need to talk about what to do differently to ensure that incidents like this [the Laquan McDonald Shooting] do not happen again, about the police culture that allows it and enables it…"

"They [The Police Accountability Task Force] have to examine decades of past practices that have allowed abusive police officers with records of complaints to escape accountability…"

***

"This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues.

No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law.

Permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely, just like what happened to Laquan McDonald."

As a result of these public statements, among others, a City of Chicago motion in limine to bar any evidence of Mayor Rahm Emanuel's comments regarding the existence of a code of silence or attempts to call him to testify at trial has been denied in the case of Shannon Spalding and Daniel Echeverria v. City of Chicago, et al., No. 12-cv-8277 (N.D. Ill., May 18, 2016).

**ANSWER**:    The City admits that Mayor Emanuel made the following statements to the City Council on December 9, 2015:

"We need to talk about what to do differently to ensure that incidents like this do not happen again; about the police culture that allows it and enables it; and the even larger cultural issues that devalue life in our communities."

7

"They have to examine decades of past practices that have allowed abusive police officers with records of complaints to escape accountability."

"The problem is sometimes referred to as the 'Thin Blue Line.' The problem is other times referred to as the 'Code of Silence.' It is this tendency to ignore; it is the tendency to deny; it is the tendency in some cases to cover-up the bad actions of a colleague or colleagues. No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law. Permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely, just like what happened to Laquan McDonald."

The City admits the court denied its motion in limine in Spalding, 12 cv 8777 to bar any evidence of Mayor Rahm Emanuel's comments regarding the existence of a code of silence or attempts to call him to testify at trial. The City further answers that the trial court's ruling in the motion in limine in *Spalding* has no precedential value and is irrelevant to the current case. The City denies the remaining allegations contained in this paragraph.

25. On April 13, 2016, the Police Accountability Task Force, issued its final report. It contains the conclusion that the Defendant City of Chicago and its law enforcement parastatals have for decades systemically failed in ways that cause extrajudicial death and injury at the hands of the police, random but pervasive physical and verbal abuse by the police, deprivation of basic and human constitutional rights, and lack of individual and systemic accountability.

**ANSWER**:    The City admits that the Police Accountability Task Force issued a report in April 2016 that stated on page 4, among other things, that the Laquan McDonald shooting "became the tipping point for long-simmering community anger. The videotape was painful, horrific and illuminating in ways that irrefutably exemplified what those in communities of color have long

said, and shocked and stirred the conscience of those in other neighborhoods. The videotape itself, the initial official reaction, which but for the efforts of the journalist community likely would have relegated McDonald's death to less than a footnote in the over 400 police-involved shootings of citizens since 2008, coupled with the 13-month delay in the release of the videotape – all underscored and exposed systemic institutional failures going back decades that can no longer be ignored. These failures manifest themselves in various ways:

- Death and Injury at the Hands of the Police

- Random But Pervasive Physical and Verbal Abuse By the Police

- Deprivation of Basic Human and Constitutional Rights

- Lack of Individual and Systemic Accountability."

The City denies the remaining allegations contained in this paragraph.

26. These systematic failures disproportionately affect African American residents of the City of Chicago.

**ANSWER**: The City denies the allegations contained in this paragraph.

27. The Police Accountability Task Force, reviewing the Chicago Police Department's own data, found that of 404 police involved shootings between 2008-2015, 74% were African American, as compared with 14% Hispanic, 8% White and 0.25% Asian. The population of Chicago is almost evenly split among these groups: 32.9% African American, 31.7% White and 28.9% Hispanic.

**ANSWER**: The City admits that on page 35 of its April 2016 report, the Police Accountability Task Force stated, "From 2008 through 2015, there were 404 officer-involved shootings resulting in injury or death. Of those 404 shootings, 299 (74%) of the persons killed or injured were black, 55 (14%) were Hispanic, 33 (8%) were white and 1 (0.25%) was Asian." The

City further admits an end note to the report found on page 59 indicates those figures were taken from annual reports from the Independent Police Review Authority. The City further admits that on page 26 of its April 2016 report, the Police Accountability Task Force stated, "Citywide, Chicago is almost evenly split by race among whites (31.7%), blacks (32.9%) and Hispanics (28.9%)." The City further admits that an end note found on page 31 attributes that statistic to data from the U.S. Census Bureau. The City lacks information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

28. The Police Accountability Task Force also concluded: "Chicago's police accountability system is broken. The system is supposed to hold police officers accountable to the people they serve and protect by identifying potential misconduct, investigating it and, when appropriate, imposing discipline. But at every step of the way, the police oversight system is riddled with legal and practical barriers to accountability." (Police Accountability Task Force. "[Executive Summary] Recommendations for Reform: Restoring Trust between the Chicago Police and the Communities they Serve," p. 15 (April 2016) [https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf])

**ANSWER**:  The City admits that on page 14 of its April 2016 report, the Police Accountability Task Force stated, "Chicago's police accountability system is broken. The system is supposed to hold police officers accountable to the people they serve and protect by identifying potential misconduct, investigating it and, when appropriate, imposing discipline. But at every step of the way, the police oversight system is riddled with legal and practical barriers to accountability." The City denies the remaining allegations contained in this paragraph.

10

29. At least 21 Chicago police officers are currently still employed by the department, some with honors, despite having shot citizens under highly questionable circumstances, resulting in payments by the City totaling at least $40 million to settle lawsuits.

**ANSWER**:    Because the allegations in this paragraph are vague and ambiguous, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

30. At least 500 Chicago police officers with more than 10 misconduct complaints over the five year period from 2001 to 2006 are still employed by the department and six officers who have shot and killed civilians also have a large volume of complaints of misconduct, for which they have not received any penalty, discipline, supervision or re-training.

**ANSWER**:    Because the allegations in this paragraph are vague and ambiguous, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

31. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians.

**ANSWER**:    The City admits that this paragraph provides examples of a definition of a police code of silence. The City denies that that there is a policy, practice, and custom of a police code of silence in the City of Chicago.

11

32. In *Obrycka v. City of Chicago*, 2012 WL 11047181 (N.D. Ill.), the longstanding and widespread CPD code of silence was again exposed when video tape and cellular phone evidence revealed Chicago police officers trying to cover up and conceal a fellow officer's vicious beating of a female bartender within the City of Chicago. The *Obrycka* jury found that the City had either (1) a widespread custom or practice of failing to investigate and/or discipline its officers; (2) a widespread custom or practice of a police code of silence; or (3) both; and a judgment was entered against the City.

**ANSWER**:    The City admits that the jury in *Obrycka v. City of Chicago et al.,* 07 C 2372, found that the City had either a widespread custom or practice of failing to investigate and/or discipline its officers in 2007, when the incident happened, or a widespread custom or practice of a police code of silence, or both, and that a judgment was entered against the City. The City denies the remaining allegations contained in this paragraph.

33. The fact that the aforementioned code of silence exists, and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and former Office of Professional Standards (O.P.S.) and I.P.R.A. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they or their successor have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false arrested and prosecutions.

**ANSWER**:    The City denies the allegations contained in this paragraph.

34. In a December 2014 report posted on the City's web site, entitled "Preventing and Disciplining Police Misconduct – An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System," the City acknowledges that in recent years there continue to be both external and internal concerns raised about how complaints of misconduct by police officers were investigated and disciplined.

**ANSWER**:     The City admits that a December 2014 report posted on the City's web site, entitled "Preventing and Disciplining Police Misconduct – An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System," stated that "In recent years, there have been both external and internal concerns about how complaints of misconduct by members of Chicago Police Department (CPD) are investigated and disciplined." The City denies any remaining allegations.

35. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

**ANSWER**:     The City denies the allegations contained in this paragraph.

36. In 2012, two Chicago Police officers filed a lawsuit for violation of their First Amendment rights and the Illinois Whistleblower Protection Act Statute, alleging an ongoing code of silence so pervasive that they were harassed, threatened, ostracized, and retaliated against by other officers, including supervisors, after they reported illegal conduct of a group of officers. Shannon Spalding and Daniel Echeverria v. City of Chicago, et al., No 12-cv-08277 (N.D. Ill.)

13

**ANSWER**:    The City admits that in 2012, two Chicago Police Officers, Shannon Spalding and Daniel Echeverria, filed a lawsuit, 12 cv 8777, alleging violation of their First Amendment rights and of the Illinois Whistleblower Protection Act, among other claims. The City admits that the officers filed an amended complaint to also allege a code of silence. The City denies the allegations that were raised in that lawsuit and denies the remaining allegations contained in this paragraph.

37. That the unconstitutional actions of the defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, I.P.R.A., the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, inter alia, by the public statements of these policy making officials, and the Department's failure to properly investigate the unconstitutional conduct of the Defendants, or to discipline them for their unconstitutional conduct.

**ANSWER**:    The City denies the allegations contained in this paragraph.

38. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury and death of Pierre Loury and of the injury to his Estate, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their false, incomplete, and misleading reports would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down, and that they were

14

immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

**ANSWER**:     The City denies the allegations contained in this paragraph. Upon information and belief, the City further denies Plaintiff's allegation that the individual defendants named herein committed misconduct.

39. But for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendant Sean Hitz and Defendant Jeff J. Riordan would not have engaged in the conduct that resulted in the shooting and death of Pierre Loury.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in this paragraph.

40. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Pierre Loury; they, therefore, are the moving forces behind, and the direct and proximate causes of, the injuries to Pierre Loury and his Estate.

**ANSWER**:     The City denies the allegations contained in this paragraph. Upon information and belief, the City further denies Plaintiff's allegation that the individual defendants named herein committed misconduct.

41. Additionally, the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Pierre Loury and his Estate.

**ANSWER**:     The City denies the allegations contained in this paragraph.

15

42. Among other things, the policies, practices and customs alleged in this complaint encouraged the extrajudicial shooting of Black men, other police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false, incorrect and misleading statements and reports, and the maintenance of a code of silence. These policies, practices and customs, therefore, are the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendants in this case and the injuries to Pierre Loury and his Estate.

**ANSWER**:     The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

### Count 3
### State Law Survival Claim

43.  Plaintiff repeats and realleges paragraphs 1- 42, as if they were fully set out in this Count.

**ANSWER**:     The City restates and re-incorporates its answers to Paragraphs 1-42 of this Complaint as though set forth fully herein.

44.  As a direct and proximate result of the wrongful actions of Defendant Sean Hitz and Defendant Jeff J. Riordan alleged in this complaint, Pierre Loury suffered serious injuries of a personal and pecuniary nature, including but not limited to, pain and suffering experienced as he was dying from the gunshot wounds inflicted by Defendant Sean Hitz and Defendant Jeff J. Riordan and other unknown Chicago police officers, subjecting Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Statute.

**ANSWER**:     The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

### Count 4
### State Law Claim for Wrongful Death

45. Plaintiff repeats and realleges paragraphs 1-44.

**ANSWER:**    The City restates and re-incorporates its answers to Paragraphs 1-44 of this Complaint as though set forth fully herein.

46.  Pierre Loury is survived by his next of kin under Illinois Law.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

47. Pierre Loury was pronounced dead on April 11, 2016.

**ANSWER:**    The City admits the allegations contained in this paragraph.

48. The wrongful death of Pierre Loury was proximately caused by the willful and wanton conduct of Defendants Hits and Riordan in violation of 740 ILCS 180/1 et seq.

**ANSWER:**    The City denies the allegations contained in this paragraph.

49. Defendant police officers' wrongful conduct was the direct and proximate cause of injury and damage to Pierre Loury and his Estate.

**ANSWER:**    The City denies the allegations contained in this paragraph.

50. Pierre's next of kin have lost and will continue to lose the pecuniary support, society and companionship of Pierre and have suffered the grief and sorrow from the loss of his love and affection, as a proximate result of his wrongful death.

**ANSWER:**    The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

## Count 5
## State Law Claim for Funeral Expenses

51. Plaintiff repeats and realleges paragraphs 1- 50, as if they were fully set out in this Count.

**ANSWER**: The City restates and re-incorporates its answers to Paragraphs 1-50of this Complaint as though set forth fully herein.

52. As a direct and proximate result of the actions of Defendant Sean Hitz and Defendant Jeff J. Riordan alleged in this complaint, having been taken within the scope of Defendants' employment with the City of Chicago, Plaintiff and the Estate of Pierre Loury sustained losses in the form of funeral and burial expenses.

**ANSWER**: The City admits Defendant Sean Hitz and Defendant Jeff J. Riordan were, at all times material to the allegations made in this complaint, employees and agents of Defendant City of Chicago acting within the scope of their employment. The City denies the remaining allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

## Count 6
## State Law Claim for Conspiracy

53. Plaintiff repeats and realleges paragraphs 1- 52, as if they were fully set out in this Count.

**ANSWER**: The City restates and re-incorporates its answers to Paragraphs 1-52 of this Complaint as though set forth fully herein.

54. Defendant Sean Hitz and Defendant Jeff J. Riordan, together with their unsued co-conspirators, reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to unreasonably

18

stop, seize, shoot and kill Pierre Loury in violation of his constitutional rights, to complete false, inaccurate, and misleading reports, and to make false statements to superior officers in order to conceal their wrongdoing.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in this paragraph.

55.  In furtherance of this conspiracy or conspiracies, the Defendants, together with their unsued co-conspirators, committed the overt acts set alleged in this complaint.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in this paragraph.

56.  These conspiracies are continuing.

**ANSWER**:    The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

### Count 7
### State Law Claim for Battery

57.  Plaintiff repeats and realleges paragraphs 1- 56, as if they were fully set out in this Count.

**ANSWER**:    The City restates and re-incorporates its answers to Paragraphs 1-56 of this Complaint as though set forth fully herein.

58.  The Defendants knowingly and without legal justification caused bodily harm to Plaintiff when they shot and killed him, thereby constituting battery under Illinois law.

**ANSWER**:    The City denies the allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

**Count 8**
**State Law Claim for Respondeat Superior Against Defendant City of Chicago**

59. Plaintiff repeats and realleges paragraphs 1- 58, as if they were fully set out in this Count.

**ANSWER**: The City restates and re-incorporate its answers to Paragraphs 1-58 of this Complaint as though set forth fully herein.

54. Defendant Sean Hitz and Defendant Jeff J. Riordan were, at all times material to the allegations made in this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants which violated state law under the doctrine of respondeat superior.

**ANSWER**: The City admits Defendant Sean Hitz and Defendant Jeff J. Riordan were, at all times material to the allegations made in this complaint, employees and agents of Defendant City of Chicago acting within the scope of their employment. The City denies the remaining allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

**Count 9**
**745 ILCS 10/9-102 Claim Against Defendant City of Chicago**

61. Plaintiff repeats and realleges paragraphs. 1- 60, as if they were fully set out in this Count.

**ANSWER**: The City restates and re-incorporates its answers to Paragraphs 1-60 of this Complaint as though set forth fully herein.

62. Defendant City of Chicago was the employer of Defendant Sean Hitz and Defendant Jeff J. Riordan at all times relevant to the allegations contained in this complaint.

**ANSWER**: The City admits the allegations contained in this paragraph.

63.    Defendant police officers committed the acts alleged in this complaint under the color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for their actions under 745 ILCS 10/9-102.

**ANSWER:**    The City admits at all times relevant to the allegations contained in this Complaint, Defendants Hitz and Riordan were acting under color of law and in the scope of their employment as employees of the City of Chicago but denies the remaining allegations contained in this paragraph.

**WHEREFORE**, the City requests judgment in its favor and against Plaintiff on this count of Plaintiff's Second Amended Complaint, award it such costs as provided by law, and grant it such other relief as the Court deems just and proper.

## JURY DEMAND

The City hereby demands a trial by jury on all issues so triable.

## 12(b)(6) DEFENSES

1.    Some, if not all, of Plaintiff's *Monell* claims are insufficiently pled under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and its progeny.  For example, Plaintiff has insufficiently pled the City's alleged failure to properly hire, train, transfer, monitor and counsel its police officers and its "encouragement of excessive and unreasonable force."

2.    To the extent that Plaintiff Tambrasha Hudson is trying to claim separate causes of action in Count IV of her Amended Complaint, that cause of action should be dismissed as duplicative, for it is already incorporated as an element of damages within the other Counts set forth in the Amended Complaint by the Administrator of the Estate, and does not state a separate cause of action.

## AFFIRMATIVE DEFENSES

1.    The City is not liable to plaintiff for any state law claims for which its employees or agents are not liable to plaintiff. 745 ILCS 10/2-109. As to all state law claims, the Defendant

21

Officers were working as a police officers at the time of this incident. Therefore, as to all claims, under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because public employees are not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (West 2008).

2.     The City is not liable to plaintiff for any federal claim for which its employees or agents are not liable to plaintiff. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

3.     Plaintiff has a duty to mitigate his damages, and any damages awarded to plaintiff would be required to be reduced by any amount by which the damages could have been lessened but were not, due to plaintiff's failure to take reasonable action to minimize those damages.

4.     Plaintiff is not entitled to attorney's fees for his state law claims. See *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989*); Kerns v. Engelke*, 76 Ill.2d 154, 166, 390 N.E.2d 859, 865 (1979); *Miller v. Pollution Control Board*, 267 Ill. App.3d 160, 171, 642 N.E.2d 475, 485 (4th Dist. 1994).

5.      The City cannot be held liable for punitive or exemplary damages in any Section 1983 action brought against it directly or indirectly by the injured party or a third party. *City of Newport et al. v. Fact Concerts, Inc.*, 435 U.S. 247 (1981).

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel for the City of Chicago

**By:**     *Raoul Vertick Mowatt*
Raoul Vertick Mowatt
Assistant Corporation Counsel

22

30 N. LaSalle Street, Suite 900
Chicago, IL 60602
312-744-3283
Atty No. 6302587

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2016, I electronically filed the foregoing using the

CM/ECF system, which will send notification of such filing to all counsel of record.


    /s/ Raoul Vertick Mowatt

23