# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF PIERRE LOURY Deceased, by Tambrasha Hudson, Administrator, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-CV-04452 |
| vs. | ) ) | Hon. Amy J. St. Eve |
| CITY OF CHICAGO, Chicago Police Officers SEAN HITZ and JEFF J. RIORDAN, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 26, 2016, Plaintiff, who is the administrator of the Estate of Pierre Loury, filed a Second Amended Complaint alleging that Defendant Chicago Police Officers Hitz and Riordan ("the Officer Defendants") violated decedent's constitutional rights under 42 U.S.C. § 1983, as well as several state law claims. Plaintiff also alleged a claim against Defendant City of Chicago ("the City") under *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91 (1978). Before the Court is the City's motion to bifurcate and stay Plaintiff's *Monell* claim from the other claims in this lawsuit for discovery and trial purposes. *See* Fed. R. Civ. P. 42(b). For the following reasons, the Court, in its discretion, denies the City's motion to bifurcate without prejudice.

## BACKGROUND

On April 11, 2016, Pierre Loury was in an automobile on the 3400 block of West Grenshaw Street, Chicago, when Defendants Sean Hitz and Riordan approached the vehicle. (R.

8, Second Am. Compl. ¶ 10.) Loury got out of the vehicle and ran away from the Officer Defendants. (*Id*. ¶ 11.) The Officer Defendants chased Loury, and as Loury was climbing over a fence, Hitz discharged his service weapon and shot Loury. (*Id*. ¶¶ 12-13.) Plaintiff alleges that the Officer Defendants jointly agreed to prepare false and incomplete police reports to present a misleading version of events to their superiors and to the public and to cover up their misconduct by claiming Loury placed them in imminent fear of bodily harm. (*Id*. ¶ 15.)

In her *Monell* claim, Plaintiff alleges that the Defendant Officers' actions were taken under the authority of the City of Chicago, its police department ("CPD"), the Independent Police Review Authority ("IPRA"), and the CPD Internal Affairs Division ("IAD"), among other entities. (*Id*. ¶ 21.) According to Plaintiffs, these entities had interrelated policies, practices, and customs, which included failing to hire, train, and discipline police officers who commit acts of excessive force, maintaining a police code of silence, encouraging the use of excessive force, and failing to properly investigate police shootings of young black men or discipline the officers who were involved in those shootings. (*Id*. ¶ 22.) In 2015, in response to the shooting of Laquan McDonald, Mayor Rahm Emanuel acknowledged that CPD has a history of allowing abusive police officers to escape accountability, partially due to the code of silence. (*Id*. ¶ 24.) Additionally, in April 2016, the Police Accountability Task Force found that CPD had systematically failed to hold police officers accountable for misconduct and excessive use of force. (*Id*. ¶¶ 25-28.) Plaintiff alleges that the Defendant Officers would not have engaged in the conduct that resulted in the shooting of Loury but for the culture of silence and lack of accountability that was pervasive in CPD. (*Id*. ¶ 39.) Essentially, Plaintiff contends that the interrelated policies of CPD and the various related entities created a culture and a system that

encouraged the Defendant Officers to act recklessly and caused them to shoot Loury. (*Id*. ¶¶ 40-42.)

## LEGAL STANDARD

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); *see also Chlopek v. Federal Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). When determining whether to bifurcate discovery and trial, the Court "must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Whether to bifurcate is a decision committed to the district court's sound discretion and is made on a case-by-case basis. *See Volkman v. Ryker*, 736 F.3d. 1084, 1088-89 (7th Cir. 2013); *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir. 2000).

## ANALYSIS

Defendants argue that bifurcation of Plaintiff's *Monell* claims is warranted for three primary reasons: (1) bifurcation is in the best interest of efficiency and judicial economy because it may allow the parties to avoid extensive discovery related to the City's policies and procedures,[1] (2) bifurcation will avoid the strong likelihood of undue prejudice to the City and the Officer Defendants, and (3) bifurcation will not prejudice Plaintiff because it will not affect her recovery of compensatory damages since it is undisputed that the Defendant Officers were acting within the scope of their employment at all times relevant to this litigation. Defendants

---

[1] Defendants note that the U.S. Department of Justice Report on CPD's policies and practices ("DOJ Report"), which Plaintiff included in a recent discovery disclosure, will only increase the breadth of *Monell* discovery needed because of its complex and wide-ranging conclusions.

note that, to the extent Plaintiff is also seeking non-monetary damages, it has already publicly agreed to work with the DOJ to reform CPD and asks the Court to take judicial notice of this fact. Additionally, the City has consented to a limited entry of judgment against it for the amount of damages caused by the violation, plus reasonable attorney fees, if bifurcation and stay of trial and discovery is granted and the Defendant Officers are found to have violated Plaintiff's constitutional rights. According to the City, this concession means that trial and discovery on the *Monell* claim may not be necessary and benefits Plaintiff because she would not be required to prove the elements of Section 1983 municipal liability. The Court addresses each argument in turn.

**I.     Efficiency and Economy**

The parties strongly dispute whether bifurcation will best serve the interests of judicial economy and efficiency. As noted above, Defendants believe bifurcation will allow the parties to avoid unduly burdensome and potentially unnecessary discovery related to the City's policies and procedures. Plaintiff responds that judicial economy would not be served by bifurcation and stay of discovery on the *Monell* claim because bifurcation could require duplicative discovery and trials and will require the Court to resolve endless discovery disputes regarding whether discovery is *Monell*-related.

In *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015), in a nearly identical case, this Court addressed a similar argument for the bifurcation of *Monell* claims. In *McIntosh*, like here, the plaintiff was the estate of a black male Chicago police officers shot and killed after a chase. *Id.* at *1. The plaintiff, like here, brought both a § 1983 unconstitutional seizure claim, a claim against other officers for failing to intervene, and a *Monell* claim against the City due to its interrelated policies and practices that

failed to adequately train and discipline officers, created a code of silence, and encouraged excessive and unjustified force, thus causing the defendant officers' actions. *Id*. at *8. Like here, the City moved for bifurcation of the plaintiff's *Monell* claims arguing that it would best serve the interest of judicial economy and would not affect the plaintiff's potential recovery of damages because the City, like here, consented to an entry of judgment if the officer defendants were found to have violated the plaintiff's constitutional rights. *McIntosh*, 2015 WL 5164080, at *6. The focus of the City's argument was that bifurcating trial and discovery would save the court and the parties from engaging in excessively broad discovery on the *Monell* claims that would not even be necessary if the defendant officers were found not liable on the plaintiff's unconstitutional seizure claim. *Id*. at *6-7.

In that case, this Court rejected the City's contention that bifurcation would be more efficient and prevent unnecessarily burdensome discovery because it was not clear that a *Monell* trial was a predicated on a finding that the officers had violated the decedent's constitutional rights. The Court explained that the Seventh Circuit has instructed district courts "to look at the factual relationship between the underlying constitutional violation and the *Monell* claim, as well as the relief requested, in order to determine when establishment of a *Monell* claim is necessarily predicated on proving the underlying liability of the individual officers." *McIntosh*, 2015 WL 5164080, at *7 (citing *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (noting some cases "have remedial importance beyond the individual plaintiff's claim for monetary damages")); *see also Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2010). Applying the Seventh Circuit's guidance to the plaintiff's claims, the Court found that, especially prior to the completion of any substantive discovery, it was premature to decide "that there can be no municipal liability in the absence of underlying individual liability." *McIntosh*,

2015 WL 5164080, at *7. The Court reasoned that the plaintiff's allegations referred to "constitutional violations that factually overlap with, but may still be distinct from, the *Monell* allegations." *Id*. at *8. It was thus plausible, particularly in light of the officers' assertions of immunity, that separate trials against the officers individually and the City on the *Monell* allegations could result in different but compatible verdicts because the officers could be found immune, and the City could still be held liable in a second duplicative trial. *Id*. As a result, the Court reasoned that, given the factual overlap between the claims, rather than simplifying the discovery process, bifurcation could potentially "add unnecessary complexity and confusion," and accordingly, found that making a "clear determination of judicial economy favoring bifurcation [was] speculative at best." *Id*. *See also Marshbanks v. City of Calumet City*, No. 13 C 2978, 2015 WL 1234930, at *4 (N.D. Ill. Mar. 16, 2015) (explaining that because defendant officers asserted qualified immunity, there was a possibility that holding the municipality liable "would not create an inconsistent verdict with a jury finding that [the officers] are not liable").

The Court's reasoning in *McIntosh* is directly applicable in this case. Here, like in *McIntosh*, the City has offered to consent to an entry of judgment and argues that bifurcation will potentially save substantial time and effort because addressing the liability of the individual officers first may prevent the need for discovery and a trial on the *Monell* claims. Like in *McIntosh*, however, the individual officers have asserted immunity defenses, (*See* R. 40, Defs.' Answer to Am. Compl. 10),[2] and thus, it is premature to assume "that there can be no municipal liability in the absence of underlying individual liability." *McIntosh*, 2015 WL 5164080, at *7.

---

[2] Defendants note that their consent to an entry of judgment for compensatory damages applies even if the Officer Defendants successfully assert qualified immunity defenses, but this argument belies the fact, discussed more fully below, that Plaintiff's may find remedial and non-economic value in obtaining a judgment against the City. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (noting that there non-economic benefits plaintiffs can obtain from suing a municipality instead of an individual officer).

6

It is possible that a jury could find the Defendant Officers immune and not individually liable, while also finding that Plaintiff's constitutional rights were indeed violated and that the City's policies caused the harm. If the Court were to grant bifurcation and this situation comes to fruition, where Plaintiff's *Monell* claim is ultimately addressed on the merits after the completion of discovery and a trial of the other claims, bifurcation would in fact "add unnecessary complexity and confusion," *id*. at *8, and "create additional costs and inefficiencies . . . without achieving any offsetting benefit." *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007) (denying motion for bifurcation in part because it did not serve the interests of judicial economy); *see also Clarett v. Suroviak,* No. 09 C 6918, 2011 WL 37838, at *1–3 (N.D. Ill. Jan 3, 2011) (denying bifurcation because if officers were found not liable based on qualified immunity defense, "there would still be a need for a second duplicative trial as to the Village's liability"); *Medina,* 100 F. Supp. 2d at 896 (denying bifurcation because, among other things, the individual officers asserted qualified immunity).

Even if bifurcation does not result in two separate trials, the Court is still not persuaded, at least at this stage, that it will result in increased judicial economy, cost savings, and efficiency. Given the factual overlap between the *Monell* claims and the constitutional claims, a stay of *Monell* discovery will likely result in continual discovery disputes between the parties about whether Plaintiff's discovery requests invoke her *Monell* claim or her other claims. As several courts in this district have noted, forcing a court to resolve constant disputes about discovery requests' connection to *Monell* liability can introduce additional confusion to a matter and make litigation less efficient. *Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) (denying bifurcation and explaining that a stay of *Monell* discovery "does not necessarily eliminate discovery disputes; it just changes the nature of the disputes");

7

*Terry v. Cook Cty. Dep't of Corr.*, No. 09C3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (noting that disputes over whether *Monell* evidence has bearing on individual liability "may add unnecessary complexity and confusion to the discovery process").

Ultimately, at this early stage in litigation, any determination of judicial economy favoring bifurcation is speculative at best. Plaintiff has represented that her *Monell* discovery requests are narrowly tailored and not a fishing expedition, and while Defendants will certainly have to respond to broader *Monell*-related requests in unitary discovery, to the extent that Defendants find Plaintiff's *Monell* discovery requests "overly broad or imposing undue burden and expense, the parties can seek assistance from the Court to tailor the requests as necessary after making independent good faith attempts to do so." *McIntosh*, 2015 WL 5164080, at *8.

### A. Prejudice

Defendants next argue that bifurcation will avoid the strong likelihood of undue prejudice to the City or the Officer Defendants because if all the claims are tried together, the jury will be likely to impugn the Officer Defendants with the negative reports about the City while also associating the City with the alleged actions of the Officer Defendants. Plaintiff responds that Defendants' concerns about potential prejudice are premature and any potential prejudice can be cured through instructions to the jury and evidentiary challenges. The Court agrees.

Several courts in this district have rejected bifurcation arguments based on undue prejudice because it is speculative to determine at the discovery stage what evidence will actually be offered at trial and whether that evidence will unfairly prejudice either the defendant officers or the municipality. *See, e.g.*, *McIntosh*, 2015 WL 5164080, at *9. In *Cadiz*, for example, the court rejected the City's argument that "bifurcation would protect the individual defendants from undue prejudice that would result" from the introduction of broader evidence about the City's

8

policies and practices regarding police misconduct. *Cadiz*, 2007 WL 4293976, at *5–6. The court reasoned that the City's argument focused on potential trial prejudice, however, no prejudice would result from allowing discovery on all claims to proceed simultaneously. *Id*. at *5. Even if all the claims proceeded to a unitary trial, limiting instructions would be sufficient to ensure that none of the defendants were prejudiced by evidence unrelated to them specifically. *Id*. at *6. Ultimately, the court found that at the discovery stage it was simply too early to determine that "the threat of unfair prejudice outweighs the inefficiencies of proceeding in two trials." *Id*. *See also Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013) (rejecting bifurcation because "any potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, motions in limine, and the Rules of Evidence"); *Cadle*, 2015 WL 6742070, at *3 (same); *Medina*, 100 F. Supp. 3d at 897 (same).

The reasoning in the above cases applies here. Discovery is still in its early stages and thus any analysis of undue prejudice is premature and speculative. Discovery proceeding simultaneously on all claims does not prejudice Defendants and if Defendants still have concerns of undue prejudice as trial approaches, the Court—at that later stage—can still order the bifurcation of the trial or can mitigate any potential prejudice "through the use of limiting instructions, motions in limine, and the Rules of Evidence." *Cadle*, 2015 WL 6742070, at *3; *see also Marshbanks*, 2015 WL 1234930, at *5 (potential prejudice at trial is "best cured by proper jury instructions and pre-trial evidentiary challenges").

**B. Recovery of Damages and Consent to Judgment**

Lastly, Defendants contend that bifurcation will not prejudice Plaintiff because it will not affect her recovery of compensatory damages since the City has consented to a limited entry of judgment against it for any damages a jury finds were caused by the Defendant Officers' alleged

9

violation of Plaintiff's constitutional rights. Defendants note that, to the extent Plaintiff is also seeking non-monetary damages, it has already publicly agreed to work with the DOJ to reform CPD. Plaintiff responds that litigation of her *Monell* claim could yield non-economic, deterrence, and reformative benefits that are otherwise unachievable if the claims are bifurcated, and notes that despite the City's agreement to work with the DOJ, there is no consent decree in place, and the DOJ has recently indicated that it may not pursue a consent decree for proposed police reforms.

In *McIntosh*, this Court rejected the City's nearly identical argument that, due its agreement to indemnify the officers and consent to an entry of judgment on the *Monell* claim, bifurcation would not prejudice the plaintiff because she would still receive complete compensatory damages if she won her suit against the individual officers. *Id*. The Court explained that there were legitimate non-economic motivators to pursue a *Monell* claim against the City. *Id*. at *9-10. A judgment against the City, for example, could be a "catalyst for change" that encouraged the City to reform the practices that led to constitutional violations. *Id*. at *10. Other courts have similarly found that, even if there are no financial benefits to maintaining a *Monell* action, there are other critical reasons the plaintiff may wish to win a judgment against a municipality on her *Monell* claim, even if she has already won a judgment against individual officers and the municipality has consented to judgment.[3] *King v. Evans*, No. 13-CV-1937, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015) (explaining that a successful *Monell* action may "have the [legitimate] benefit of deterring future official misconduct . . . even if it results in an award of only nominal additional monetary damages"); *Giles*, 2013 WL

---

[3] Notably, the proposed consent to judgment expressly denies any wrongdoing on the part of the City, thereby minimizing any deterrent effect. (R. 63, Ex. C, Consent to Entry of Judgment Against Defendant City of Chicago); *see also Giles*, 2013 WL 6512683, at *3 (noting same).

6512683, at *3 ("mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs"); *Cadiz*, 2007 WL 4293976, at *10 (denying motion for bifurcation due importance of proving that a municipality has unconstitutional policies, practices, or customs); *Medina*, 100 F. Supp. 2d at 896 (noting that there are non-economic benefits plaintiffs can obtain from suing a municipality instead of an individual officer).

Additionally, the Court is not persuaded that the DOJ Report and the City's agreement to work with the DOJ on reforming CPD will result in sufficient reforms such that plaintiffs need not pursue *Monell* claims against the City. As Plaintiff notes in response, there is no consent decree in place requiring the City or CPD to reform its policies and practices. Also, recent public reports suggest that the DOJ may not pursue any reforms of CPD. *See, e.g.*, John Byrne et al., *Concerns Mount Over Chicago Cop Reform as Sessions Vows to 'Pull Back'*, CHI. TRIB., Mar. 1, 2017 (discussing DOJ's decision to pull back on reform of police departments). Given this uncertainty, Plaintiff should not be denied the opportunity to seek to deter future official misconduct through her *Monell* claim.

In sum, Plaintiff has other important objectives—most notably, deterrence and reform—that would be furthered by a judgment holding the City liable for the Defendant Officers' alleged misconduct. As this Court stated in *McIntosh*, "[a] judgment against a municipality can be a catalyst for change, because it not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue." 2015 WL 5164080, at *10 (citations and quotations omitted).

Accordingly, the Court finds that bifurcation and staying discovery is not warranted at this time. The potential for bifurcation to serve the interests of judicial economy or prevent unfair prejudice is speculative at best, especially when weighed against Plaintiff's legitimate interests in obtaining a *Monell* judgment against the City and the fact that Plaintiff is the master of her complaint. *Awalt v. Marketti,* No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012) (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim. . .")).

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to bifurcate Plaintiff's *Monell* claims and stay discovery and trial on those claims pending resolution of the claims against the Defendant Officers, without prejudice to a renewed motion for bifurcation of trial after discovery is completed.

**Dated:** April 20, 2017

_____
AMY J. ST. EVE
United States District Court Judge