# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ESTATE OF PIERRE LOURY,                )
Deceased, by Tambrasha Hudson,         )      No. 16 C 04452
Administrator,                         )
                                       )      Judge Amy J. St. Eve
                                       )
                          Plaintiff,   )      Magistrate Judge Jeffrey T. Gilbert
                                       )
         vs.                           )      JURY TRIAL DEMANDED
                                       )
CITY OF CHICAGO, Chicago Police        )
Officers SEAN HITZ (Star No. 6272)     )
and JEFF J. RIORDAN (Star No. 7716),   )
                                       )
                          Defendants.  )

### PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT CITY OF CHICAGO'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Tambrasha Hudson, as Administrator of the Estate of Pierre Loury, deceased, (hereafter referred herein as "Plaintiff") by and through her attorneys, submit the following Responses and Objections to Defendant City of Chicago's First Set of Interrogatories to Plaintiff.

### GENERAL OBJECTIONS

1.    Plaintiff objects to each Interrogatory to the extent that it seeks information containing communications or other matters protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege, or any information that is otherwise privileged, protected, or confidential under any applicable doctrine, statute or rule. Such responses as may hereafter occur will not include information protected by such privileges or doctrines, and inadvertent disclosure of the same will not be deemed a waiver of any such privilege or doctrine.

2.    Plaintiff objects to each Interrogatory, including each definition and instruction contained therein, insofar as it purports to impose upon Plaintiff's obligations beyond those

1

imposed by the Federal Rules of Civil Procedure. Plaintiff's responses will be in accordance with the discovery rules provided by the Federal Rules of Civil Procedure.

3.    Plaintiff objects to the Interrogatories to the extent they are not sufficiently limited or reasonably calculated to lead to the discovery of admissible evidence and, are therefore, vague, overbroad and unduly burdensome.

4.    Plaintiff objects to any Interrogatory the answer to which requires information not within her care, custody or control.

5.    Plaintiff objects to each Interrogatory to the extent that it calls for information previously produced or currently in possession of Defendant City of Chicago or which is equally available to the City of Chicago and Plaintiff from other sources.

6.    Plaintiff objects to the extent that Defendant City of Chicago's Interrogatories are repetitive, overlapping or duplicative.

7.    Plaintiff objects to Defendant City of Chicago's Interrogatories to the extent they are not reasonably limited in time.

8.    Plaintiff objects to Defendant City of Chicago's Interrogatories to the extent they assume facts and conclusions not already established.

9.    Nothing set forth in specific objections is intended as or should be construed as a waiver of the above general objections, or of any other specific objection set forth. The foregoing General Objections are herein incorporated by reference into each Response below.

## PLAINTIFF'S RESPONSES TO INTERROGATORIES

1.    Paragraph 21 of Plaintiff's First Amended Complaint states, "The actions of Defendant Sean Hitz and Defendant Jeff J. Riordan as alleged in this complaint were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Chicago, its police department, Police Board, Independent Police Review Authority ("IPRA"), Internal Affairs Division of the Chicago Police Department ("IAD"), Personnel Division, and/or Superintendents." Identify with specificity:

2

(a)    Which actions of Defendant Sean Hitz and Defendant Jeff J. Riordan
       Paragraph 21 refers to;

(b)    What Plaintiff means by the phrase "done under the authority";

(c)    What the "one or more interrelated de facto policies, practices and/or
       customs" Plaintiff refers to in Paragraph 21 are;

(d)    All evidence upon which Plaintiff relies to support the contention that the
       "actions of Defendant Sean Hitz and Defendant Jeff J. Riordan as alleged
       in this complaint were done under the authority of one or more interrelated
       de facto policies, practices and/or customs of the City of Chicago, its
       police department, Police Board, Independent Police Review Authority
       (I.P.R.A.), Internal Affairs Division of the Chicago Police Department
       (I.A.D.), Personnel Division, and/or Superintendents".

**RESPONSE**:

(a): Paragraph 21 of the Amended Complaint refers to the actions described in Paragraphs 12 through 15 of the Amended Complaint.

(b):  The phrase "done under the authority" is synonymous with the phrase "under color of any statute, ordinance, regulation, custom, or usage" contained in 42 U.S.C. § 1983.

(c) and (d):  Plaintiff objects to subsections (c) and (d) because they are overly broad, and, to the extent that they are contention interrogatories, they are premature given that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* claims. Subject to and without waiving these objections, Plaintiff states the following:

**Failure to Train**: Statements of City agents and documents publicly available evidence that the policies, practices and customs regarding training provided by the Chicago Police Department is wholly deficient, subpar and lacking in a number of respects, including, but not limited to:

- failure to provide clear, understandable training on when deadly force is appropriate, including in specific scenarios, or real life situations;

- failure to repeat or reinforce lessons, procedures, scenarios, etc. from the Academy in such a way that training is retained and remembered;

3

- failure to update training after the Academy with evolving information and knowledge;

- failure to require regular, adequate and periodic training after the Academy on the use of deadly force and the avoidance of using deadly force whenever possible;

- failure to provide any appropriate or ongoing testing to determine whether training was retained and understood;

- failure to include strategies and requirements of de-escalation so as avoid the inappropriate, unnecessary or unreasonable use of deadly force;

- failure to include training on discriminatory actions by police officers, implicit bias training, training to recognize and avoid the effects of prejudice and racism;

- failure to prioritize, stress or highly place a principle value on the sanctity and preservation of human life;

- failure to adequately include or prioritize strategies to avoid the use of deadly force, including training to first seek cover and provide adequate time to safely assess each situation;

- failure to stress, reinforce or otherwise mandate the use of deadly force as a last resort;

- failure to include requirements or mandates that officers should not follow a code of silence or adhere to a blue wall of silence and that the protection of wrongdoing by fellow officers will not be tolerated;

- failure to include the responsibility and duty to identify and report the inappropriate use of force, including deadly force, by other officers;

- failure to require appropriate analysis and investigation of each shooting incident to determine what additional training should be conducted and/or required;

- failure to include strategies of the use of seeking cover and making a timely assessment of the safety of given situations and likely consequences;

- failure to include the identification, description and priority of the duty of officers to intervene, to prevent, avoid or ameliorate the misconduct of other officers, including another officer's use of deadly force and,

- failure to reassess training needs after police involved shootings and to require and mandate additional training as informed by police involved shootings.

Plaintiff further responds that the Mayor's Police Accountability Task Force found that

4

the Chicago Police Department has consistently failed to devote adequate resources to training officers after the Academy and fails to mandate any specific training, other than a firearms certification, after completion of the Academy.

The code of silence within the Chicago Police Department has been acknowledged by City officials, including Mayor Rahm Emanuel and Corporation Counsel Steven Patton, and police officers. Mayor Emanuel affirmed the existence of the code of silence within the Chicago Police Department, including but not limited to dishonest reporting by police officers after officer-involved shooting incidents. Furthermore, on November 13, 2012, a federal jury found against the City of Chicago and a judgment was entered that the City of Chicago had a widespread custom or practice of a police code of silence and/or failing to investigate and/or discipline its officers. *See Obrycka v. City of Chicago*, No. 07 CV 2372 (N.D. Ill.).

In *Spaulding v. City of Chicago*, No. 12 C 8777 (N.D. Ill.), Chicago Police Officer Janet Hanna testified that all new Chicago police officers are trained in the code of silence and instructed not to break it at the Chicago police academy. Specifically, Janet Hanna testified that recruits at the Chicago Police academy are instructed to "go with the flow" when observing other officers' improper conduct on the street rather than intervening to prevent the improper conduct from occurring. Assistant United States Attorney Netols also testified that his prosecution of 18 Chicago police officers identified a code of silence within the Chicago Police Department which discouraged officers from not only reporting criminal activities of other officers but also from interrupting or stopping any officer's criminal activity in progress.

Chicago Mayor Emanuel's Task Force on Police Accountability found an institutionalized code of silence within the Chicago Police Department, reinforced by the Chicago Police Department's rules and policies. Despite this overwhelming evidence of a code of silence the City has no appropriate training and has made no efforts to halt the code of silence; rather the

police academy and informal training supports, condones and encourages the continuation of the code of silence.

The Mayor's Task Force also found a history of institutional racism within the Chicago Police Department. The Department's acceptance of racial discrimination is further evidenced by the Department's Standards of Conduct for Department members which does not explicitly include a prohibition against officers exhibiting racial bias, does not include Academy and/or ongoing training to ameliorate or combat racial bias exhibited by officers despite the fact that Sharon Farley, Chief Administrator of IPRA, recommended in an advisory letter that explicit language prohibiting officers from exhibiting racial bias be included in CPD's Standards because "(t)his issue is sufficiently important to warrant inclusion." *See also* paragraphs 12, 13, 14, and 15 of the Second Amended complaint for the actions of Officers Hitz and Riordan.

Additionally, *see* http://www.chicagotribune.com/news/local/breaking/ct-home-square-police-shooting-20160412-story.html, for reference to a witness who states that Pierre Loury was shot while scaling a fence and the video which accompanies the article. *See also* audio and video recordings in the possession of IPRA reflecting the incident.

**Failure to Supervise:** Statements of City agents and documents publicly available evidence that the policies, practices and customs of supervising, including monitoring, counseling and use of transfers as well as the disciplining of CPD, including with regard to the use of deadly forces, are wholly deficient, subpar and lacking in a number of respects, including, but not limited to, the following:

- failure to provide adequate supervision, monitoring and/or counseling prior to police involved shootings to deter officers from engaging the use of deadly force;

- failure to act swiftly and appropriately in response to police involved shootings;

6

failure to take appropriate action towards officers involved in police involved shootings;

- failure to adequately assess and investigate each police involved shooting to determine appropriate action for individual officer and changes in department policies in general;

- failure to monitor, appropriately transfer or intently supervise officers involved in police involved shootings in order to provide any additional necessary training or re- training and assess officer readiness to return to patrol duties and reinstate an officer's ability to carry and use a firearm; and,

- failure to appropriately and swiftly discipline officers for violation of department policies and engaging in unjustified shootings of civilians, particularly African American men, whether or not a subject target was hit.

This failure to supervise is also evidenced in part by the wholly inadequate and deficient

IPRA investigations and the inappropriate reliance by the Chicago Police Department on these

investigations in deciding to take any action. A recent report issued by the Office of the

Inspector General of Chicago found that IPRA's reporting on police shootings was "inaccurate

and incomplete."   Between 2008 and 2013, IPRA recommended that only 34 of 74, less than

50%, of officers who were found guilty of making false statements in violation of Rule 14 be

fired.  See Mark Konkol, *SPECIAL REPORT: Not All 'Career Killer' Rule 14 violations End

with Firing*, DNAinfo.com, December 21, 2013. Furthermore, a DNAinfo.com investigation into

charges and discipline resulting from Rule 14 violations found that dozens of Chicago police

officers "made up stories, filed false reports or told lies to cover up their actions of the lies of

fellow cops." See Mark Konkol, *SPECIAL REPORT: Rule 14's Slow Road to Justice for Police

Who Lie*, DNAinfo.com, December 20, 2013.

Furthermore, the Mayor's Task Force found that Chicago makes no effort to screen for and identify problem police officers or employ any form of systematic review to identify risk issues exposed and identified in lawsuits brought against the City and/or individual Chicago Police Department officers. *See also* Paragraphs 12, 13, 14, and 15 of the Second Amended Complaint for the actions of Officers Hitz and Riordan.

Additionally, *see* http://www.chicagotribune.com/news/local/breaking/ct-home-square-police-shooting-20160412-story.html, for reference to a witness who states that Pierre Loury was shot while scaling a fence and the video which accompanies the article. *See also* audio and video recordings in the possession of IPRA reflecting the incident.

2.   Paragraph 22 of Plaintiffs First Amended Complaint states, "At all times material to the allegations contained in this complaint, the Defendant City of Chicago and its police department, Superintendents, I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated de facto policies, practices, and customs which included, among other things:

a)   The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force, including unjustified shootings;

b)   the police code of silence;

c)   the encouragement of excessive and unreasonable force;

d)   the failure to properly investigate shootings of civilians, particularly young Black men, by Chicago police officers;

e)   the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings; and/or

f)   the failure to properly train and supervise Chicago police officers with regard to discharging their weapons at civilians, particularly at young black men."

Identify with specificity:

(a)   Each of the "interrelated de facto policies, practices, and customs" referred to in Paragraph 22, including subparts (a)-(f), that Plaintiff contends the City had;

(b)   All evidence upon which Plaintiff relies to support the contention that each of the "interrelated de facto policies, practices, and customs" listed in response to subpart (a) of this interrogatory was a widespread practice that was so permanent or well settled as to constitute a custom or usage with the force of law during the five years prior to and at the time of the April 11, 2016 death of Pierre Loury ("Decedent");

     (c)    All evidence upon which Plaintiff relies to support the contention that the City's final policymaker was deliberately indifferent to each policy, practice, and custom listed in response to subpart (a) of this interrogatory during the five years prior to and at the time of the April 11,2016 death of Decedent;

     (d)    All evidence upon which Plaintiff relies to support the contention that each of the "interrelated de facto policies, practices, and customs" listed in response to subpart (a) of this interrogatory was the moving force behind any constitutional injury suffered by Plaintiff or Decedent.

**RESPONSE**: Plaintiff objects to each of the subsections of this interrogatory as they are overly broad, and to the extent that they are contention interrogatories, they are premature given the fact that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* policy claims.

Subject to and without waiving these objections, Plaintiff responds by referring and incorporating her response to Defendant City's Interrogatory No.1(c) and Plaintiff's Response to Defendant City's Requests for Production of Documents, No. 1. *See also*, data released publicly by the IPRA; Angela Caputo, *Data: Black Chicagoans at Higher Risk of Being Shot by Police*, CHICAGO REPORTER, January 23, 2014; Sarah Macareg and Alison Flowers, *Amid Shootings, Chicago Police Department Upholds Culture of Impunity*, TRUTHOUT, October 22, 2014; and publicly released Complaint Register information at the Citizens Police Data Project's website: www.cpdb.com.

    3.    Identify with specificity each shooting by a Chicago Police Officer of a civilian that took place during the five years prior to and at the time of the April 11, 2016 death of Decedent that Plaintiff claims to have been unconstitutional, including the date of the shooting, the shooting officer(s), and the person(s) shot. For each such shooting, identify the following with specificity:

     (a)    All evidence upon which Plaintiff relies to support the contention that the given  shooting was unconstitutional;

     (b)    All evidence upon which Plaintiff relies to support the contention that any alleged policy identified in Plaintiffs RESPONSE to Interrogatory No. 2 was the moving force behind that shooting;

     (c)    Any exculpatory evidence that would support the contention that the given shooting was reasonable under the circumstances, such as the possession of a weapon by the person shot.

**RESPONSE**: Plaintiff objects to each of the subsections of this interrogatory as they are overly broad, and to the extent that they are contention interrogatories, they are premature given the fact that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* policy claims. Subject to and without waiving these objections, Plaintiff responds by referring and incorporating her response to Defendant City's Interrogatory Nos.1(c) and 2.

4.    Identify with specificity each investigation of a shooting by a Chicago police officer of a civilian that took place during the five years prior to and at the time of the April 11, 2016 death of Decedent that Plaintiff claims to have been deficient, including the date of the shooting, the shooting officer(s), the person(s) shot, and the Log or CR #. For each such shooting, identify the following with specificity:

    (a)    All evidence upon which Plaintiff relies to support the contention that the investigation was deficient;

    (b)    All steps that Plaintiff contends the investigating officers should have taken but did not, and why the investigating officers should have taken those steps;

    (c)    All steps that Plaintiff contends the investigating officers took but should not have, and why they should not have taken those steps;

    (d)    Whether the Cook County State's Attorney or U.S. Attorney declined to prosecute the shooting officer(s) and if there was no prosecution, why such a decision was unjustified.

**RESPONSE**: Plaintiff objects to each of the subsections of this interrogatory as they are overly broad, and to the extent that they are contention interrogatories, they are premature given that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* policy claims. Subject to and without waiving these objections, Plaintiff responds by referring and incorporating her response to Defendant City's Interrogatory Nos.1(c) and 2.

5.    Paragraph 29 of Plaintiffs First Amended Complaint states, "At least 21 Chicago police officers are currently still employed by the department, some with honors, despite having shot citizens under highly questionable circumstances, resulting in payments by the City totaling at least $40 million to settle lawsuits." Identify with specificity the following:

    (a)    Each of the 21 or more Chicago police officers to whom Paragraph 29 is

(b)   The dates of the shootings in which each of these officers were involved;

(c)   The people each of these officers shot;

(d)   Each of the "highly questionable circumstances" to which Paragraph 29 refers;

(e)   The names, docket numbers, and venues for each of the shooting-related lawsuits in which these officers were involved;

(f)   All evidence upon which Plaintiff relies to support the contention that these officers are "currently still employed by the department, some with honors";

(g)   All evidence upon which Plaintiff relies to support the contention that these officers should have been terminated by the department or were not worthy of whatever honors they may have received.

**RESPONSE**: Plaintiff objects to each of the subsections of this interrogatory as they are overly broad, and to the extent that they are contention interrogatories, they are premature given that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* policy claims. Subject to and without waiving these objections, Plaintiff responds by referring and incorporating her response to Defendant City's Interrogatory Nos.1(c) and 2. *See also*, data released publicly by the IPRA; Angela Caputo, *Data: Black Chicagoans at Higher Risk of Being Shot by Police*, CHICAGO REPORTER, January 23, 2014; Sarah Macareg and Alison Flowers, *Amid Shootings, Chicago Police Department Upholds Culture of Impunity*, TRUTHOUT, October 22, 2014

6.   Paragraph 30 of Plaintiffs First Amended Complaint states, "At least 500 Chicago police officers with more than 10 misconduct complaints over the five year period from 2001 to 2006 are still employed by the department and six officers who have shot and killed civilians also have a large volume of complaints of misconduct for which they have not received any penalty, discipline, supervision or training." Identify with specificity the following:

(a)   All evidence upon which Plaintiff relies to support the contention that the 500 or more Chicago police officers with more than 10 misconduct complaints over the five year period from 2001 to 2006 are still employed by the department;

(b)   All evidence upon which Plaintiff relies to support the contention that the officers referred to in subpart (a) of this interrogatory committed misconduct or should have been terminated for any misconduct;

(c)   All evidence upon which Plaintiff relies to support the contention that "six officers who have shot and killed civilians also have a large volume of

complaints for misconduct for which they have not received any penalty, discipline, supervision or training."

(d)    All evidence upon which Plaintiff relies to support the contention that the officers referred to in subpart (c) of this interrogatory committed misconduct, should have received any penalty, discipline, or additional supervision or training.

**RESPONSE**: Plaintiff objects to subsections (a) through (c) of this interrogatory as they are overly broad, and to the extent that they are contention interrogatories, they are premature given that Plaintiff has not yet been able to conduct depositions or obtain documentary discovery specifically related to Plaintiff's *Monell* policy claims. Plaintiff further objects to the extent this interrogatory calls for information that is or should be uniquely in the possession of the Defendant City of Chicago. Subject to and without waiving said objections, *see also* data released publicly by the IPRA; Angela Caputo, *Data: Black Chicagoans at Higher Risk of Being Shot by Police*, CHICAGO REPORTER, January 23, 2014; Sarah Macareg and Alison Flowers, *Amid Shootings, Chicago Police Department Upholds Culture of Impunity*, TRUTHOUT, October 22, 2014; and publicly released Complaint Register information at the Citizens Police Data Project's website: www.cpdb.com.

Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being more than the "25 written interrogatories, including all discrete subparts" allowed by Rule 33(a)(1) of the Federal Rules of Civil Procedure.

7.    Paragraph 31 of Plaintiff's First Amended Complaint states, "The policy, practice and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians." Identify with specificity the following:

(a)    All evidence upon which Plaintiff relies to support the contention that, during the five years prior to and at the time of the April 11, 2016 death of

12

           Decedent, a code of silence in the Chicago Police Department, has
           resulted in "police officers refusing to report. . .the unjustified discharge of
           an officer's weapon";

(b)    All evidence upon which Plaintiff relies to support the contention that,
           during the five years prior to and at the time of the April 11, 2016 death of
           Decedent, police officers were "remaining silent...during official
           investigations" of officer-involved shootings "in order to protect
           themselves or fellow officers from internal discipline, civil liability or
           criminal charges";

(c)    all evidence upon which Plaintiff relies to support the contention that,
           during the five years prior to and at the time of the April 11, 2016 death of
           Decedent, police officers were "giving false and misleading information
           during official investigations" of officer-involved shootings "in order to
           protect themselves or fellow officers from internal discipline, civil liability
           or criminal charges."

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

8.    Paragraph 33 of Plaintiffs First Amended Complaint states, "The fact that the
        aforementioned code of silence exists, and that its adverse impact is allowed to
        occur through the actions and inactions of high ranking police officials including
        police Superintendents and former Office of Professional Standards (O.P.S.) and
        I.P.R.A. Directors, is also evidenced by the fact that while former O.P.S. Director
        Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have
        all acknowledged publicly that they are aware of the existence of the custom and
        policy of a code of silence, they or their successors have not acted to eliminate the
        code or to counteract its impact on police discipline, the use of excessive force,
        the fabrication of evidence and false arrests and prosecutions/' Identify with
        specificity the following:

(a)    All evidence upon which Plaintiff relies to support the contention that the
           code of silence's "adverse impact is allowed to occur through the actions
           and inactions of high ranking police officials," including what specific
           actions or inactions those "high ranking police officials" have taken to
           allow the code of silence to have an adverse impact during the five years
           prior to and at the time of the April 11, 2016 death of Decedent;

(b)    All evidence upon which Plaintiff relies to support the contention that the
           code of silence's "adverse impact is allowed to occur through the actions
           and inactions of . . .former O.P.S. and I.P.R.A. Directors", including what
           specific actions or inactions those "former O.P.S. and I.P.R.A. Directors"
           have taken to allow the code of silence to have an adverse impact during
           the five years prior to and at the time of the April 11, 2016 death of
           Decedent;

(c)    All evidence upon which Plaintiff relies to support the contention that the

13

officials named in Paragraph 33 "have all acknowledged publicly that they are aware of the existence of the custom and policy of a police code of silence," as well as all evidence that their acknowledgement pertains to the timeframe during the five years prior to and at the time of the April 11, 2016 death of Decedent;

(d)     All evidence upon which Plaintiff relies to support the contention that police officials, IPRA officials and Mayor Emanuel "have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false arrests and prosecution" during the five years prior to and at the time of the April 11, 2016 death of Decedent;

(e)     The relevance of the alleged "fabrication of evidence and false arrests and prosecutions" to the case at bar.

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by  Rule

33(a)(1) of the Federal Rules of Civil Procedure.

9.     Paragraph 35 of Plaintiffs First Amended Complaint states, "The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence, are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline." Identify with specificity:

(a)     All evidence upon which Plaintiff relies to support the contention that the "de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence, are interrelated";

(b)     All evidence upon which Plaintiff relies to support the contention that the "de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence ...exacerbate the effects of each other";

(c)     All evidence upon which Plaintiff relies to support the contention that the "de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence.. .institutionalize police lying";

(d)     All evidence upon which Plaintiff relies to support the contention that the "de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence ... immunize police officers from discipline".

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

14

33(a)(1) of the Federal Rules of Civil Procedure.

10.    Paragraph 37 of Plaintiffs First Amended Complaint states, "That the unconstitutional actions of the defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, I.P.R.A., the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, inter alia, by the public statements of these policy making officials, and the Department's failure to properly investigate the unconstitutional conduct of the Defendants, or to discipline them for their unconstitutional conduct." Identify with specificity the following:

(a)    All evidence upon which Plaintiff relies to support the contention that the Internal Affairs Division has been involved in and ratified the unconstitutional actions of the Defendants;

(b)    All evidence upon which Plaintiff relies to support the contention that IPRA has been involved in and ratified the unconstitutional actions of the Defendants;

(c)    All evidence upon which Plaintiff relies to support the contention that the Detective division has been involved in and ratified the unconstitutional actions of the Defendants;

(d)    All evidence upon which Plaintiff relies to support the contention that the Public Affairs Section has been involved in and ratified the unconstitutional actions of the Defendants;

(e)    All evidence upon which Plaintiff relies to support the contention that any other "municipal supervisors and policy makers" have been involved in and ratified the unconstitutional actions of the Defendants;

(f)    All evidence upon which Plaintiff relies to support the contention that "a wide range of other police officers, officers, and Divisions of the Department" have been involved in and ratified the unconstitutional actions of the Defendants;

(g)    All evidence upon which Plaintiff relies to support the contention that the Internal Affairs Division, IPRA, the Detective division, the Public Affairs Section, or any other "municipal supervisors and policy makers" has been involved in and ratified the unconstitutional actions of any officers who have shot civilians during the five years prior to and at the time of the April 11, 2016 death of Decedent;

(h)    All evidence upon which Plaintiff relies to support the contention that the Department has failed "to properly investigate the unconstitutional conduct of the Defendants";

(i)    All evidence upon which Plaintiff relies to support the contention that the Department has failed "to discipline [Defendants] for their unconstitutional conduct."

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

15

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

11.  Paragraph 38 of Plaintiff's First Amended Complaint states, "The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury and death of Pierre Loury and of the injury to his Estate, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their false, incomplete, and misleading reports would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct." Identify with specificity:

(a)  All evidence upon which Plaintiff relies to support the contention that "Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors;"

(b)  All evidence that Defendants' misconduct referenced in Paragraph 38 was not revealed or reported by fellow officers or their supervisors;

(c)  All evidence upon which Plaintiff relies to support the contention that "Defendants had good reason to believe . . . that their false, incomplete and misleading reports would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down";

(d)  All evidence upon which Plaintiff relies to support the contention that any of Defendants' reports were "false, incomplete, and misleading";

(e)  All evidence that Defendants' "false, incomplete, and misleading reports" referred to in subpart (d) of this interrogatory went "unchallenged by their supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down";

(f)  All evidence upon which Plaintiff relies for the contention that "Defendants had good reason to believe . . . that they were immune from disciplinary action";

(g)  All evidence upon which Plaintiff relies for the contention that "Defendants had good reason to believe" that they were protected "from the consequences of their unconstitutional conduct".

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

12.  Paragraph 39 of Plaintiffs First Amended Complaint states, "But for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendant Sean Hitz and Defendant Jeff J. Riordan would not have engaged in the conduct that resulted in the shooting and death of Pierre

16

Loury." Identify with specificity:

    (a)    All evidence upon which Plaintiff relies for the contention that Defendants Hitz and Riordan believed that "they would be protected, both by fellow officers and by the department, from serious consequences" for engaging in "the conduct that resulted in the shooting and death of Pierre Loury";

    (b)    All evidence upon which Plaintiff relies for the contention that "but for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendant Sean Hitz and Defendant Jeff J. Riordan would not have engaged in the conduct that resulted in the shooting and death of Pierre Loury".

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

    13.    Paragraph 40 of Plaintiffs First Amended Complaint states, "The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Pierre Loury; they, therefore, are the moving forces behind, and the direct and proximate causes of, the injuries to Pierre Loury and his Estate." Identify with specificity:

    (a)    The "interrelated policies, practices and customs" to which Paragraph 40 is referring;

    (b)    All evidence upon which Plaintiff relies to support the contention that "The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference";

    (c)    All evidence upon which Plaintiff relies to support the contention that "The interrelated policies, practices and customs, as alleged in this complaint, individually and together ... encouraged the Defendant officers to commit the acts alleged in this complaint against Pierre Loury";

    (d)    All evidence upon which Plaintiff relies to support the contention that "The interrelated policies, practices and customs, as alleged in this complaint, individually and together ... are the moving forces behind, and the direct and proximate causes of, the injuries to Pierre Loury and his Estate."

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

14. Paragraph 41 of Plaintiff s First Amended Complaint states, "Additionally, the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Pierre Loury and his Estate." Identify with specificity:

    (a) All evidence upon which Plaintiff relies to support the contention that "the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was done with deliberate indifference";

    (b) All evidence upon which Plaintiff relies to support the contention that "the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers ... acted as a direct and proximate cause of the injuries to Pierre Loury and his Estate."

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being

more than the "25 written interrogatories, including all discrete subparts" allowed by Rule

33(a)(1) of the Federal Rules of Civil Procedure.

15. Paragraph 42 of Plaintiff's First Amended Complaint states, "Among other things, the policies, practices and customs alleged in this complaint encouraged the extrajudicial shooting of Black men, other police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false, incorrect and misleading statements and reports, and the maintenance of a code of silence. These policies, practices and customs are, therefore, the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendants in this case and the injuries to Pierre Loury and his Estate." Identify with specificity:

    (a) All evidence upon which Plaintiff relies for the contention that "the policies, practices and customs alleged in this complaint encouraged the extrajudicial shooting of Black men;"

    (b) All evidence upon which Plaintiff relies to support the contention that "the policies, practices and customs alleged in this complaint encouraged...the fabrication of evidence;"

    (c) All evidence upon which Plaintiff relies to support the contention that "the policies, practices and customs alleged in this complaint encouraged...the intimidation of witnesses;"

    (d) All evidence upon which Plaintiff relies to support the contention that "the policies, practices and customs alleged in this complaint encouraged...the making of false, incorrect and misleading statements and reports;"

    (e) All evidence upon which Plaintiff relies to support the contention that "the policies, practices and customs alleged in this complaint encouraged...the maintenance of a code of silence."

**RESPONSE**: Plaintiff objects to Interrogatories 6(d) through Interrogatory 15 (a)-(e) as being more than the "25 written interrogatories, including all discrete subparts" allowed by Rule 33(a)(1) of the Federal Rules of Civil Procedure.

November 18, 2016

Respectfully Submitted,
ESTATE OF PIERRE LOURY, deceased,
by Tambrasha Hudson, Administrator.

By: _____
One of Her Attorneys

Andrew M. Stroth
ACTION INJURY LAW GROUP, LLC
191 N. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 771-2444
astroth@actioninjurylawgroup.com

Joseph J. Duffy
Corey B. Rubenstein
Mariah E. Moran
STETLER, DUFFY & ROTERT, LTD
10 S. LaSalle Street, Suite 2800
Chicago, Illinois 60603
(312) 338-0200
jduffy@sdrlegal.com
mmoran@sdrlegal.com
cruben@sdrlegal.com

Carlton Odim
ODIM LAW OFFICES
225 W. Washington Street, Suite 2200
Chicago, Illinois 60606
(312) 578-9390
carlton@odimlaw.com

*ATTORNEYS FOR PLAINTIFF*

19

VERIFICATION

I verify under penalty of perjury that the foregoing document is true and correct, except as to those matters stated to be on information and belief.

Executed on November __, 2016
Chicago, Illinois

By _____
Tambrasha Hudson
Administrator
Estate of Pierre Loury, Deceased

## CERTIFICATE OF SERVICE

I, Carlton Odim, an attorney, hereby certify that on November 18, 2016, a copy of the

foregoing *Plaintiff's Response and Objections to Defendant City of Chicago First Set of*

*Interrogatories to Plaintiff* was served upon the parties listed below via email:

Jason Marx
Assistant Corporation Counsel
30 N. LaSalle Street - Suite 900
Chicago, Illinois 60602
(312) 744-1975
jason.marx@cityofchicago.org

*ATTORNEYS FOR DEFENDANTS HITZ AND RIORDAN*


Raoul Mowatt
Assistant Corporation Counsel
30 N. LaSalle Street - Suite 900
Chicago, Illinois 60602
(312) 744-3983
raoul.mowatt@cityofchicago.org

*ATTORNEYS FOR DEFENDANT CITY OF CHICAGO*


November 18, 2016


By:_____
        One of the attorneys for Plaintiff


20