# TAB 12

ROBERT KLIMAS August 24, 2017

Page 1

1  IN THE DISTRICT COURT OF THE UNITED STATES
   FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3
     ESTATE OF PIERRE LOURY,        )
4    Deceased, by Tambrasha         )
     Hudson, Administrator,         )
5                                   )
                  Plaintiff,        )
6                                   )
                -vs-                ) No. 16 C 04452
7                                   )
     CITY OF CHICAGO, Chicago       )
8    Police Officers SEAN HITZ     )
     (Star No. 6272) and JEFF J.    )
9    RIORDAN (Star No. 7716),       )
                                    )
10                Defendants.       )

11

12         Videotape deposition of COMMANDER ROBERT

13   KLIMAS, taken before NANCY DECOLA EATINGER, C.S.R.,

14   and Notary Public, pursuant to the Federal Rules of

15   Civil Procedure for the United States Courts

16   pertaining to the taking of depositions for the

17   purpose of discovery, at Suite 2300, 191 North Wacker

18   Drive, Chicago, Illinois, commencing at 9:57 o'clock

19   a.m., taken on August 24th, 2017.

20

21

22

23

24

09:45:36

U.S. Legal Support, Inc.
(312) 236-8352

ROBERT KLIMAS                                                August 24, 2017

```
                                                              Page 5
 1                      (Witness sworn)
 2              COMMANDER ROBERT KLIMAS,
 3   called as a witness herein, having been first duly
 4   sworn, was examined upon oral interrogatories and
 5   testified as follows:
 6                       EXAMINATION
 7                      By Mr. Stroth:
 8      Q   Commander Klimas, thank you for coming in          09:59:35
 9   today.                                                    09:59:37
10      A   You're welcome.                                    09:59:37
11      Q   You are here today to give testimony on            09:59:39
12   behalf of the City of Chicago, is that correct?           09:59:41
13      A   That's correct.                                    09:59:43
14      Q   You understand that you are not giving             09:59:44
15   testimony in your personal capacity?                      09:59:47
16      A   Correct.                                           09:59:50
17      Q   Have you given deposition testimony in the         09:59:50
18   past?                                                     09:59:55
19      A   I have.                                            09:59:55
20      Q   About how many times approximately?                09:59:56
21      A   It's probably around seven or more now.            09:59:58
22      Q   Have you ever testified as an expert witness       10:00:05
23   in any police-involved shooting case?                     10:00:08
24      A   No.                                                10:00:11
```

|  |  |  |
|---|---|---|
| | | Page 10 |
| 1 | A Correct. | 10:05:09 |
| 2 | Q -- is that correct? | 10:05:10 |
| 3 | Did you talk to anyone other than your City | 10:05:10 |
| 4 | lawyer? | 10:05:14 |
| 5 | A I mentioned my deposition to the general | 10:05:15 |
| 6 | counsel of the City of Chicago, Chicago Police | 10:05:19 |
| 7 | Department, aware that they were -- that I was | 10:05:25 |
| 8 | providing a deposition. | 10:05:28 |
| 9 | Q Okay. Are you currently employed with the | 10:05:29 |
| 10 | City of Chicago? | 10:05:31 |
| 11 | A I am. | 10:05:32 |
| 12 | Q And what is your current position? | 10:05:32 |
| 13 | A I'm a commander at the Bureau of Internal | 10:05:35 |
| 14 | Affairs, Chicago Police Department. | 10:05:39 |
| 15 | Q Can you please describe your job | 10:05:40 |
| 16 | responsibilities? | 10:05:44 |
| 17 | A Yeah, I've been a commander since August of | 10:05:45 |
| 18 | 2008. My roles at that time and now are the same. | 10:05:49 |
| 19 | In between, and I'll explain, there was | 10:05:56 |
| 20 | another commander that assisted me for a brief period | 10:05:59 |
| 21 | of time, but we have three investigative sections | 10:06:01 |
| 22 | within the Bureau of Internal Affairs. | 10:06:07 |
| 23 | It started off with General Investigations, | 10:06:12 |
| 24 | Special Investigations and Confidential | 10:06:15 |

ROBERT KLIMAS							August 24, 2017

|   |   |   |
|---|---|---|
|  | Page 11 |  |
| 1 | Investigations.  That has changed.  Now we have Area | 10:06:17 |
| 2 | North, Central and South along with Confidential | 10:06:21 |
| 3 | Investigations. | 10:06:24 |
| 4 | My role is to review all confidential cases, | 10:06:25 |
| 5 | cases that are complete.  I look -- I sign off on all | 10:06:30 |
| 6 | of those. | 10:06:37 |
| 7 | Then I look at all sustained cases from the | 10:06:37 |
| 8 | other sections, investigative sections that have a | 10:06:40 |
| 9 | penalty of ten days or more. | 10:06:44 |
| 10 | We also have cases that go out to the | 10:06:49 |
| 11 | districts in units.  I do not review those.  Those | 10:06:51 |
| 12 | are lesser transgressions, but that's part of the | 10:06:56 |
| 13 | Bureau of Internal Affairs to collect and review and | 10:07:00 |
| 14 | disseminate to the appropriate parties. | 10:07:03 |
| 15 | I answer questions to the various commanders | 10:07:06 |
| 16 | and command staff regarding certain issues that come | 10:07:09 |
| 17 | up in an investigation. | 10:07:13 |
| 18 | I make sure we open an investigation if we | 10:07:15 |
| 19 | become aware of misconduct of a department member, | 10:07:20 |
| 20 | whether it's civilian or sworn, and those come from a | 10:07:23 |
| 21 | variety of sources and make -- you know, there's | 10:07:27 |
| 22 | issues. | 10:07:34 |
| 23 | We meet with the superintendent on a weekly | 10:07:35 |
| 24 | basis, we discuss certain matters with the | 10:07:37 |

Page 12

1  superintendent, we have meetings periodically with --
2  quarterly with the Cook County -- no, I'm sorry, with
3  the corporation counsel, periodic meetings with the
4  Cook County State's Attorney's Office and
5  periodically with the Federal Bureau of
6  Investigation.
7  Those change based -- it's really based upon
8  issues that are occurring, whether the number of
9  investigations and whether there's some serious
10 ongoing investigations that the FBI is looking at or
11 the Cook County State's Attorney's Office.
12 That's, that's the bulk of my work. I sign
13 off on other various cases that are administratively
14 closed.
15 So you understand, the City of Chicago has a
16 very open complaint allegation system that IPRA
17 handles, and allegations are made against police
18 officers or City department members that really are
19 not -- well, they're not City, City of Chicago,
20 Chicago Police Department personnel. They could be
21 various other agencies within the City of Chicago,
22 and it usually comes up like with an M-plate, this
23 M-plate went through a red light, and they file a
24 complaint against the Chicago Police Department.

Page 13

1         Those are administratively closed. I sign   10:09:07
2 off on all of those to make sure that anything that's   10:09:10
3 administratively closed falls, you know, within the   10:09:13
4 parameters that we're not going to investigate, and   10:09:16
5 I'm the one that has to answer to those.   10:09:18
6     Q   Understood.   10:09:21
7     A   Okay.   10:09:22
8     Q   Who do you report to?   10:09:22
9     A   We have a chief, and currently that chief is   10:09:23
10 Eddie Welch, III, W-e-l-c-h.   10:09:28
11     Q   And prior to the position that you just   10:09:29
12 described, what was your position directly before   10:09:34
13 that?   10:09:36
14     A   Prior to that I was a special agent with the   10:09:37
15 Federal Bureau of Investigation, and I was a special   10:09:40
16 agent from 1987 to 2008, and that was -- I retired at   10:09:43
17 the end of July of 2008.   10:09:49
18     Q   And what were your duties in that role, in   10:09:51
19 that position?   10:09:55
20     A   It changed over the years, but the bulk of my   10:09:55
21 investigation work was in white collar, insurance   10:09:59
22 fraud, commodities fraud, securities fraud, bank   10:10:06
23 fraud, wire fraud, and it was -- I worked in Phoenix,   10:10:09
24 Little Rock and Chicago.   10:10:21

Page 18

| | | |
|---|---|---|
| 1 | THE WITNESS: What I'm, again, struggling with is | 10:16:12 |
| 2 | we're talking about the investigation, and so the | 10:16:26 |
| 3 | practices of our officers in that investigation | 10:16:30 |
| 4 | failing to, failing to conform to our policies. | 10:16:36 |
| 5 | There will be times that there are, and when | 10:16:43 |
| 6 | you have police-involved shootings, again, they're | 10:16:47 |
| 7 | investigated by IPRA, but I am aware of certain | 10:16:52 |
| 8 | instances in which in the IPRA investigations they | 10:16:56 |
| 9 | have concluded that officers did not conform to | 10:17:00 |
| 10 | policies, and the shooting may be justified, but | 10:17:05 |
| 11 | there are other things that come up that they | 10:17:10 |
| 12 | sustained an allegation that the officers failed to | 10:17:13 |
| 13 | conform from various policies and rules and | 10:17:18 |
| 14 | regulations, and that could be minor. It could be | 10:17:23 |
| 15 | officers need to have the same ammunition in their | 10:17:29 |
| 16 | magazine, there are times when they don't. It has to | 10:17:33 |
| 17 | be the same brand. | 10:17:36 |
| 18 | They also -- it could be as serious as a | 10:17:37 |
| 19 | Rule 14, and that's a false -- making a false | 10:17:41 |
| 20 | statement oral or written, and again, the shooting | 10:17:44 |
| 21 | may have been justified, but they -- their conclusion | 10:17:48 |
| 22 | is the officer lied, and they will seek separation of | 10:17:51 |
| 23 | that officer. | 10:17:55 |
| 24 | MR. STROTH: Q   Can you provide me with a | 10:17:57 |

Page 19

| | | |
|---|---|---|
| 1 | specific example or a case or -- that you remember | 10:17:59 |
| 2 | where there was this type of inquiry? | 10:18:03 |
| 3 | A    The minor transgressions occur -- I don't | 10:18:06 |
| 4 | have a specific name of a law member. When they look | 10:18:14 |
| 5 | at the ammunition in an officer's magazine or the | 10:18:18 |
| 6 | shell casings, they need to be the same. That | 10:18:22 |
| 7 | occurs. | 10:18:25 |
| 8 | We're still talking -- you know, if they | 10:18:25 |
| 9 | have a nine-millimeter semi-automatic weapon, they | 10:18:28 |
| 10 | have nine-millimeter rounds, but it's -- they're | 10:18:32 |
| 11 | mixing a Federal brand with a Remington brand, okay, | 10:18:36 |
| 12 | and that's, that's a minor -- they're still | 10:18:40 |
| 13 | nine-millimeter rounds, but they have to be the same | 10:18:45 |
| 14 | brand in the magazine. That occurs. | 10:18:48 |
| 15 | MR. SCHOOP: Could you clarify Federal versus | 10:18:50 |
| 16 | Remington? | 10:18:52 |
| 17 | THE WITNESS: Oh, I'm sorry. Federal is a brand, | 10:18:53 |
| 18 | Federal brand of ammunition, okay. It's a well-known | 10:18:55 |
| 19 | company -- | 10:18:59 |
| 20 | MR. STROTH: Q    Yes. | 10:19:00 |
| 21 | A    -- that manufactures ammunition. Remington | 10:19:00 |
| 22 | is another manufacturer of ammunition and very common | 10:19:04 |
| 23 | brands of nine millimeter. | 10:19:10 |
| 24 | And the Rule 14, I don't recall the name of | 10:19:12 |

ROBERT KLIMAS August 24, 2017

Page 20

| | | |
|---|---|---|
| 1 | the incident, but I do recall the facts in which an | 10:19:17 |
| 2 | officer was off duty, was working security for a | 10:19:22 |
| 3 | Mexican restaurant, and there was a car pulls up and | 10:19:31 |
| 4 | shoots at some people there in front of the | 10:19:35 |
| 5 | restaurant on the sidewalk. | 10:19:40 |
| 6 | The officer ends up shooting at a car which | 10:19:41 |
| 7 | he believed was the car that shot at the victims on | 10:19:45 |
| 8 | the, on the sidewalk. | 10:19:52 |
| 9 | His -- the shooting itself may have been | 10:19:55 |
| 10 | justified, but I do recall that they -- the officer, | 10:19:58 |
| 11 | and I don't know the colors of the car, he said it | 10:20:03 |
| 12 | was blue when, in fact, it was red. | 10:20:06 |
| 13 | It was a material fact, and it was actually | 10:20:08 |
| 14 | the opposite because there was two cars involved, and | 10:20:13 |
| 15 | IPRA sought separation on a Rule 14 violation, and | 10:20:18 |
| 16 | the superintendent concurred with that. | 10:20:21 |
| 17 | In fact, the superintendent wrote a PAX 501. | 10:20:23 |
| 18 | It's an all-employee memo that goes out and | 10:20:31 |
| 19 | explaining his position regarding that incident, but | 10:20:35 |
| 20 | that -- | 10:20:38 |
| 21 | Q Could you define PAX 501, can you tell me | 10:20:38 |
| 22 | what that is? | 10:20:42 |
| 23 | A Yeah. It's a memo that goes out from the | 10:20:43 |
| 24 | superintendent. They're periodic, I would say three | 10:20:46 |

Page 28

| | | |
|---|---|---|
| 1 | written policies in its real application, in its real | 10:31:16 |
| 2 | practice, does that match with the written policies? | 10:31:19 |
| 3 | That's the core of the question. | 10:31:21 |
| 4 |     A   Okay. You are going to have arguments on | 10:31:23 |
| 5 | both sides. | 10:31:34 |
| 6 |         When there -- when a matter is sustained, | 10:31:36 |
| 7 | when there's discipline and if there is discipline, | 10:31:39 |
| 8 | the investigation has sustained an allegation, and | 10:31:43 |
| 9 | now it goes through a process of what is the penalty, | 10:31:49 |
| 10 | and that penalty could be as severe as separation or | 10:31:54 |
| 11 | it could be a reprimand, okay, and you're going to | 10:31:57 |
| 12 | have arguments by command channel. | 10:32:01 |
| 13 |         You could have disagreement with the | 10:32:06 |
| 14 | superintendent and IPRA, and even if the | 10:32:08 |
| 15 | superintendent and IPRA agrees that an officer should | 10:32:11 |
| 16 | be separated, it's got to go to the Police Board, and | 10:32:14 |
| 17 | the Police Board may disagree with IPRA and the | 10:32:19 |
| 18 | superintendent and find -- well, they could do a | 10:32:24 |
| 19 | number of things. | 10:32:30 |
| 20 |         They could find the officer did not violate | 10:32:31 |
| 21 | any policies and restore them back to their position. | 10:32:34 |
| 22 | They could agree with the -- IPRA and the | 10:32:39 |
| 23 | superintendent but not separate that officer, or they | 10:32:42 |
| 24 | could agree with the -- IPRA and the superintendent | 10:32:47 |

ROBERT KLIMAS August 24, 2017

Page 44

1  MR. STROTH:  Q  So was the number for the   10:53:37
2  penalty written --   10:53:39
3     A  No.   10:53:40
4     Q  -- during that time period in question?   10:53:40
5        Okay, thank you.  Can we go off the record   10:53:43
6  for a few minutes?   10:53:46
7     THE VIDEOGRAPHER:  Off the record at 10:52 a.m.   10:53:47
8        (Brief recess taken.)   10:53:54
9     THE VIDEOGRAPHER:  Back on the record at 10:53   10:55:06
10  a.m.   10:55:10
11     MR. STROTH:  Q  Does the City of Chicago have in   10:55:11
12  place policies and practices that impede the   10:55:14
13  investigation of officer misconduct?   10:55:20
14     MR. SCHOOP:  That impede?   10:55:24
15     MR. STROTH:  Impede.   10:55:26
16     MR. SCHOOP:  Impede.  You're talking from the   10:55:27
17  time from 2010 to 2016?   10:55:28
18     MR. STROTH:  Yes, 2010 to 2016.   10:55:30
19     MR. SCHOOP:  Do you understand the question?   10:55:33
20     THE WITNESS:  I do.   10:55:35
21     MR. SCHOOP:  Okay.  Go ahead and answer the   10:55:35
22  question.   10:55:38
23     THE WITNESS:  Again, this is one that people   10:55:38
24  could disagree with and argue one way or the other,   10:55:40

ROBERT KLIMAS                                             August 24, 2017

Page 45

| | | |
|---|---|---|
| 1 | but the Internal Affairs Division and IPRA to be now | 10:55:44 |
| 2 | COPA operate -- have to operate under the framework | 10:55:49 |
| 3 | in which various Collective Bargaining Agreements | 10:55:53 |
| 4 | have been approved, and there's various State | 10:55:59 |
| 5 | statutes that cover concern, especially like | 10:56:03 |
| 6 | anonymous complaints and sworn affidavits, so we have | 10:56:08 |
| 7 | to abide by those Collective Bargaining Agreements, | 10:56:14 |
| 8 | and we have to abide by the State statute and City | 10:56:18 |
| 9 | ordinances. | 10:56:21 |
| 10 |     Obviously those things can change, and | 10:56:22 |
| 11 | during this timeframe, from 2010 to 2016, we did | 10:56:25 |
| 12 | change the various levels of appeals for police | 10:56:30 |
| 13 | misconduct that was sustained. | 10:56:39 |
| 14 |     So prior to the 2012 contract, I believe | 10:56:41 |
| 15 | it's 2012, the officers were able to take a matter to | 10:56:45 |
| 16 | the Police Board or to grieve it or take it to the | 10:56:52 |
| 17 | superintendent.  There was -- and I could be -- there | 10:56:56 |
| 18 | was three levels of review or appeals. | 10:56:59 |
| 19 |     Now -- and that delays the process because | 10:57:04 |
| 20 | one could take a while, then you go to the other, | 10:57:08 |
| 21 | then you go to the other.  And now you get one bite | 10:57:11 |
| 22 | of that apple, so to speak.  You have to choose, so | 10:57:16 |
| 23 | that speeds up the process. | 10:57:20 |
| 24 |     That is probably an example in which people | 10:57:23 |

Page 46

1  would argue that impeded the disciplinary process          10:57:26
2  because it took so long for a final decision.              10:57:30
3         Another example that people discuss is the          10:57:33
4  sworn affidavit, and again, that's State statute, and      10:57:38
5  it's Collective Bargaining Agreement.  Obviously           10:57:46
6  those things can be changed, but until then we have        10:57:49
7  to operate under that.                                     10:57:52
8         Now, that doesn't mean we cannot investigate        10:57:53
9  something in which we don't have a sworn affidavit if      10:57:56
10 we have independent verifiable evidence of that            10:58:01
11 allegation.                                                10:58:06
12        So if someone came in with an allegation of         10:58:07
13 police misconduct and then fails or refuses to sign        10:58:12
14 an affidavit, if we have independent verifiable            10:58:18
15 evidence, example, an audiotape or video of that           10:58:23
16 incident, we can override that sworn affidavit             10:58:31
17 requirement, okay.                                         10:58:35
18        So another example of which the process has         10:58:41
19 sped up is the command channel review.  If an              10:58:49
20 investigation is sustained and it's less than              10:58:53
21 separation, it goes through a command channel review       10:58:57
22 process.  That investigation goes to the commanding        10:59:00
23 officer of that officer that was charged and then the      10:59:04
24 next level up, typically a deputy chief.                   10:59:10

ROBERT KLIMAS August 24, 2017

Page 47

| | | |
|---|---|---|
| 1 | That process is kind of bogged down, and we | 10:59:14 |
| 2 | now implemented 15 days for each level. If you don't | 10:59:18 |
| 3 | respond in 15 days, you're deemed to accept it, and | 10:59:24 |
| 4 | it moves on to the next level, and after the deputy | 10:59:28 |
| 5 | chief, it usually goes back to the chief of Internal | 10:59:32 |
| 6 | Affairs for final disposition and then obviously the | 10:59:35 |
| 7 | superintendent who has the final say. | 10:59:37 |
| 8 | That has sped up the process, so things have | 10:59:39 |
| 9 | changed during this 2010 to 2016 to speed up the | 10:59:42 |
| 10 | investigations, but we still have to work under the | 10:59:51 |
| 11 | framework of the Collective Bargaining Agreements and | 10:59:55 |
| 12 | State law. | 11:00:00 |
| 13 | MR. STROTH:  Q  Commander Klimas, does the City | 11:00:02 |
| 14 | of Chicago's disciplinary system lack integrity? | 11:00:04 |
| 15 | MR. SCHOOP:  I'm going to object to the clearly | 11:00:08 |
| 16 | argumentative form of the question, and that's -- | 11:00:10 |
| 17 | that's not with -- that's not a good faith | 11:00:14 |
| 18 | interpretation of the designation for Paragraph 6. | 11:00:17 |
| 19 | MR. STROTH:  Q  We disagree with counsel's | 11:00:19 |
| 20 | perspective.  My question is simple. | 11:00:22 |
| 21 | Commander Klimas, does the City of Chicago's | 11:00:25 |
| 22 | disciplinary system lack integrity from your -- from | 11:00:27 |
| 23 | the City's perspective? | 11:00:31 |
| 24 | MR. SCHOOP:  You know what, Commander, go ahead | 11:00:31 |

ROBERT KLIMAS                                August 24, 2017

|    |                                                              | Page 48  |
|----|--------------------------------------------------------------|----------|
| 1  | and answer the question.                                     | 11:00:31 |
| 2  | THE WITNESS: I would strongly disagree. It has               | 11:00:32 |
| 3  | integrity because we discipline officers all the             | 11:00:35 |
| 4  | time, and we investigate criminal activity of                | 11:00:39 |
| 5  | officers, and we have charged, worked with State's           | 11:00:42 |
| 6  | attorneys or the Federal agencies, and we have               | 11:00:45 |
| 7  | prosecuted department members, and they have gone to         | 11:00:48 |
| 8  | jail, both civilians and sworn members.                      | 11:00:51 |
| 9  | If we didn't have integrity, then no one --                  | 11:00:55 |
| 10 | no matters would be sustained, no one would go to            | 11:00:58 |
| 11 | jail, and we take discipline seriously, and I believe        | 11:01:02 |
| 12 | it has a lot of integrity.                                   | 11:01:08 |
| 13 | MR. STROTH:  Q   Thank you.                                  | 11:01:11 |
| 14 | Does the City of Chicago's disciplinary                      | 11:01:13 |
| 15 | system fail to effectively deter officer misconduct?         | 11:01:16 |
| 16 | MR. SCHOOP: Again, counsel, this question is                 | 11:01:24 |
| 17 | asking for an opinion that I would strongly and              | 11:01:27 |
| 18 | vociferously suggest is outside the scope of                 | 11:01:31 |
| 19 | Paragraph 6.                                                 | 11:01:34 |
| 20 | But Commander, do you understand the                         | 11:01:35 |
| 21 | question?                                                    | 11:01:36 |
| 22 | THE WITNESS: I do.                                           | 11:01:36 |
| 23 | MR. SCHOOP: Go ahead and answer the question,                | 11:01:37 |
| 24 | please.                                                      | 11:01:39 |

ROBERT KLIMAS                                            August 24, 2017

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
|    | Page 49                                                      |          |
| 1  | THE WITNESS: The -- it does. We -- there are                 | 11:01:39 |
| 2  | matters that come to our attention in Internal               | 11:01:45 |
| 3  | Affairs or the superintendent has asked us to conduct        | 11:01:48 |
| 4  | some various investigations. Discipline should --            | 11:01:54 |
| 5  | the ultimate goal is to change behavior if it's              | 11:02:00 |
| 6  | serious.                                                     | 11:02:03 |
| 7  | You're always going to have minor                            | 11:02:04 |
| 8  | transgressions, okay, you're late for roll call for          | 11:02:06 |
| 9  | whatever reason, and you liked -- you know, that             | 11:02:11 |
| 10 | usually goes to the district, hey, you know, you             | 11:02:14 |
| 11 | could start off with a SPAR, if you continue to be           | 11:02:16 |
| 12 | late, either you get a new alarm clock or you're             | 11:02:20 |
| 13 | going to go up to the next level and you're going to         | 11:02:24 |
| 14 | take more time off.                                          | 11:02:27 |
| 15 | You're trying to discipline the officer to,                  | 11:02:28 |
| 16 | you know, change their behavior. It's just like              | 11:02:31 |
| 17 | being a parent. Doesn't mean that you don't love             | 11:02:34 |
| 18 | your children, but you have to discipline them at            | 11:02:36 |
| 19 | times, and it's the same thing in the police                 | 11:02:40 |
| 20 | department, we're trying to change their behavior.           | 11:02:42 |
| 21 | If it gets serious enough, then the                          | 11:02:45 |
| 22 | penalties go up, and if the matter is serious, it            | 11:02:48 |
| 23 | could start out at a serious penalty, okay, and if           | 11:02:54 |
| 24 | it's just so outrageous, it could -- first time could        | 11:02:57 |