# TAB 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF PIERRE LOURY, Deceased, by Tambrasha Hudson, Administrator, ) ) ) | No. 16 C 04452 |
| Plaintiff, ) ) | Judge Amy J. St. Eve |
| vs. ) ) | |
| CITY OF CHICAGO, Chicago Police Officers SEAN HITZ (Star No. 6272) and JEFF J. RIORDAN (Star No. 7716), ) ) ) ) | |
| Defendants. ) | |

## AFFIDAVIT OF KEVIN DUFFIN

I, Kevin Duffin, being duly sworn under oath and under penalties provided by law, hereby declare, depose and state that if called as a witness in these proceedings, I would testify of my own personal knowledge as follows:

1. I am a Commander with the Chicago Police Department ("CPD") and have been employed with the CPD since 1982, serving as the Commander of the Area North Detective's Division ("Area North") since 2015. In my capacity as Commander of Area North, I have supervised the supervisory officers assigned to Area North, such as sergeants and lieutenants, in addition to police detectives tasked with the responsibility of investigating violent and property crimes which occur, generally, in the north side of the City of Chicago.

2. Violent crimes that Area North investigates include, but are not limited to: (a) fatal and non-fatal shootings of civilians where the suspected shooter is another civilian; (b) fatal and non-fatal shootings of civilians where the shooter is known to be a police officer; and (c) fatal and non-fatal shootings of police officers where the suspected shooter is a civilian.

3. In my capacity as the Commander of Area North, I have personally supervised numerous fatal and non-fatal shootings, including fatal and non-fatal shootings involving Chicago police officers. Based on that experience, I have learned that it is the custom and practice of CPD to investigate shootings, whether fatal or non-fatal, in a thorough and objective manner, without regard for the identity of the shooter and/or the person who has been shot.

1

4. The City of Chicago further believes that officers who shoot civilians should not be insulated or otherwise shielded from responsibility for shooting a civilian if it is determined that, based on the totality of the circumstances, the officer's use of deadly force did in fact violate governing law, CPD policy, or both. It is also the belief of the City of Chicago that the use of deadly force alone is not the basis for concluding that an officer has engaged in professional misconduct and that such a conclusion can only be made after conducting a thorough and objective investigation.

5. In 2010 to 2016,[1] in any instances where there was a fatal or non-fatal shooting in the City of Chicago, the CPD treated the shooting incident as a criminal investigation and the location of the shooting incident was considered a crime scene. Detectives with CPD's Detectives Division were dispatched to the crime scene to conduct an investigation to gather information about the shooting to determine whether, in fact, a crime had been committed and then to refer the matter to the Office of the Cook County State's Attorney ("CCSAO") which would, in turn, determine whether criminal charges are appropriate based on the evidence discovered during the course of the investigation. During an investigation of a shooting, the primary focus of the investigating detectives is to determine whether a crime has been committed and, if so, by whom. The Detectives Division did not conduct investigations of fatal or non-fatal shootings in order to determine whether professional discipline was necessary or appropriate, and did not assume based on the mere fact that an officer had used deadly force that the officer engaged in misconduct even in instances where the use of deadly force resulted in a civilian fatality.

6. In 2010 to 2016, when the Detectives Division would conduct an investigation of a fatal or non-fatal shooting, a parallel investigation would be conducted by the Office of the Independent Police Review Authority ("IPRA"). The focus of an IPRA investigation concerned whether the officer's use of deadly force was justified under governing CPD regulations and laws. Based on evidence gathered during the course of IPRA's investigation, IPRA could either: (a) conclude that there was a basis to find that the officer's use of force was in compliance with CPD's policies and decide that no professional discipline is warranted; or (b) conclude that the officer's use of force was not in compliance with CPD's policies and seek to impose professional discipline and, depending on the severity of the situation, refer the matter to the CCSAO for criminal prosecution.

---

[1] The 2010 to 2016 time frame referenced in Paragraph Nos. 5 through 12 herein is so specified because that was the time frame that the Court previously deemed relevant for purposes of discovery in the matter captioned *Estate of Pierre Loury v. City of Chicago*, et al, Case No. 16 C 4552, for which this affidavit is being submitted.

2

7. In 2010 to 2016, when the Detectives Division would conduct an investigation of a fatal and/or non-fatal shooting, a parallel investigation could also be conducted by the CPD's Bureau of Internal Affairs ("BIA"). The focus of BIA investigations can include allegations of officer misconduct, including but not limited to, the use of excessive force against civilians, including the use of deadly force resulting in fatalities. If BIA found evidence to conclude that an officer did, in fact, engage in excessive force against a civilian, BIA has the authority to initiate formal discipline against the officer, in addition to referring the matter to the CCSAO and/or the Office of the United States Attorney for the Northern District of Illinois for possible criminal prosecution of the officer.

8. In 2010 to 2016, although the Detective Division's primary focus during a shooting investigation was to determine whether a crime had been committed and, if so, by whom, evidence of possible officer misconduct would not be ignored by investigating detectives. If an investigating detective learned information that caused that detective to believe that the officer involved in the shooting violated the law or CPD policies, that information that would not be ignored by the investigating detectives. Instead, such information concerning possible misconduct by a police officer would be forwarded to one or more of the following entities: IPRA, BIA, and/or CCSAO. The information would be shared with those entities for the purpose of investigating whether the officer's use of deadly force was unlawful and a basis for professional discipline and/or possible criminal prosecution.

9. From 2010 to 2016, it was the policy of the City of Chicago for a supervising officer to be present at the crime scene involving the use of deadly force by a police officer. But the presence of a supervising officer at a crime scene did not prevent BIA or IPRA from conducting a parallel investigation stemming from the officer-involved fatal or non-fatal shooting.

10. From 2010 to 2016, the fact that CPD detectives handled investigations of police-involved shootings as criminal investigations did not prevent IPRA, BIA or the CCSAO from conducting their own parallel investigations of the officer or officers involved in the fatal or non-fatal shooting in question.

11. Pursuant to Federal Rule of Civil Procedure 30(b)(6), I was one of two witnesses designated by the City of Chicago to give testimony about CPD's policies, practices and/or customs about documenting, reporting and investigating police shootings at civilians from 2010 to 2016 in the matter captioned *Estate of Pierre Loury v. City of Chicago*, et al, Case No. 16 C 4552. I was not designated to testify about CPD's policies, practices and/or customs about investigation of police misconduct in connection with police shootings at civilians. As mentioned above, investigations of possible police officer misconduct in relation to fatal or non-fatal police-involved shootings are conducted by IPRA and/or BIA. The Detectives Division is not tasked with investigating possible officer misconduct in fatal or non-fatal police-involved shootings.

12. During the course of my Rule 30(b)(6) deposition, counsel asked whether CPD, between 2010 and 2016, knew of any practices of CPD investigators that did not conform to CPD policies about conducting investigations of shootings at civilians. My response to that question was "no" and remains my response, because the CPD was unaware of any practice of CPD investigators that conflicted with policies concerning shooting investigations. If CPD had knowledge of such circumstances, then it would have conducted inquiries about whether investigators' handling of investigations failed to conform with CPD policy concerning how to conduct police-involved shooting investigations. As I said in my earlier deposition testimony, CPD was unaware of any such circumstances. Moreover, to the extent that any alleged practice of an investigator possibly constituted professional misconduct and/or possible criminal conduct, any such inquiry would be handled by IPRA, BIA or both, in addition to possible referral to the CCSAO and/or the Office of the United States Attorney for the Northern District of Illinois for possible criminal prosecution of the officer.

**FURTHER AFFIANT SAYETH NOT.**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signed]* Kevin Duffin