TAB 16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ESTATE OF PIERRE LOURY,    )
Deceased, by Tambrasha    )
Hudson, Administrator,    )
      )
      Plaintiff,  ) No. 16 C 04452
      )
   vs    )
      )
CITY OF CHICAGO, Chicago    )
Police Officers SEAN HITZ    )
(Star No. 6272) and JEFF J.    )
RIORDAN (Star No. 7716),    )
      )
      Defendants.  )

     The discovery deposition of ROGER

CLARK, taken in the above-entitled cause before

Steven J. Brickey, CSR, State of Illinois, at 30

North LaSalle Street, Chicago, Illinois, on the

27th day of December, A.D., 2017, commencing at

10:10 o'clock a.m.

L.A. Court Reporters, L.L.C.
312-419-9292

Page 58

1    and it's supported as I stated it the footnote by

2    a number of other companion studies that resonate

3    with their findings.

4         Q.    Other than --

5         A.    And it -- it involved a very deep

6    review statistically in the very -- in various

7    cases and -- and a number of those are commented

8    on in the report.

9         Q.    What is the actual name of the

10   standard that they use?

11              MR. STROTH:  Objection.  Foundation.

12   BY THE WITNESS:

13        A.    I don't remember.

14   BY MR. GREEN:

15        Q.    So you don't know?

16        A.    I did know and I do not know the

17   term they used as I sit here today.

18        Q.    But right now other than it's

19   entitled by the Department of Justice, you don't

20   know what the standard is that they used?

21        A.    I do not recall I think is the best

22   way to answer it and I do not contest it.

23        Q.    Now, you also relied on the seven

24   conclusions you've listed here of the DOJ report,

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

1   did you -- is that correct?

2       A.      There were five broad categories and

3   they -- I listed them out in that paragraph.

4       Q.      All right.  But you didn't look at

5   any data yourself that the DOJ looked at in coming

6   to these conclusions, did you?

7               MR. STROTH:  Objection.  Form.

8   BY THE WITNESS:

9       A.      I did not review any independent

10  data other than what they cited and what was cited

11  in the other reports I listed in the footnote.

12  BY MR. GREEN:

13      Q.      So you didn't look in any specific

14  facts cited or any specific instances that they

15  were discussing, yourself independently?

16      A.      I did not.  I was not an independent

17  investigator of the -- of the cases cited.

18      Q.      Did you talk to anyone at the DOJ of

19  how they came about with their conclusions?

20      A.      No.

21      Q.      Would you acknowledge that the

22  Department of Justice, also the report, did

23  recognize that the Chicago Police Department were

24  making attempts at reform historically?

Electronically signed by Steven Brickey (501-307-281-8473)                    954cbfef-baad-48a4-9690-8c9024c19f87

Page 60

1          A.      I noted that.

2          Q.      Including body cameras by 2016, is

3    that correct?

4          A.      I noted that that's already occurred

5    last time I was here for the other deposition that

6    was announced.

7          Q.      Is there any basis to question that

8    the DOJ's findings that there were indeed reform

9    attempts underway by the Chicago Police

10   Department?

11         A.      Well, I saw that they cited -- that

12   the City has stated their desire, but that stated

13   desire is there and also I took it as an

14   acknowledgement by the City of this exact thing,

15   this Monell issue, that it did exist and does --

16   and does exist and I took it as -- you know, I did

17   not take the statement that it was being

18   eliminated.  I certainly based on the two cases

19   that I've had here with the McIntosh and this that

20   span a year and the problems are there.

21         Q.      Now, if you were to do an

22   independent investigation into what you cite here

23   through the Department of Justice investigation,

24   which -- what data would you look at?

L.A. Court Reporters, L.L.C.
312-419-9292

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 61

1            MR. STROTH:  Objection.  Foundation.

2    BY THE WITNESS:

3        A.     I think I would -- first, you're

4    talking about my approach?

5    BY MR. GREEN:

6        Q.     If --

7        A.     If I were going to do a statistical

8    review?  I think that's been done to the -- to

9    the -- I mean, that's been looked at over and over

10   and over again, at least five times as I've cited

11   in different reports, all with the same

12   conclusion.  That's why the report is written as

13   it is.  It's there.  The City has been on notice.

14   The problem has existed.  It continues to exist.

15   It certainly continued to exist to this issue and

16   that's why the report is formatted this way.

17       Q.     So it's fair to say you wholly rely

18   on these seven conclusions of the Department of

19   Justice report?

20            MR. STROTH:  Objection.  That

21   mischaracterizes the expert's testimony thus far.

22   BY THE WITNESS:

23       A.     I do not rely wholly, but I

24   certainly can find no problem with those seven at

Electronically signed by Steven Brickey (501-307-8473)            954cbfef-baad-48a4-9690-8c9024c19f87

Page 62

1    all in any way.  There is no outreach on any of

2    those seven.

3    BY MR. GREEN:

4        Q.    Now, on page seven I'll ask -- I'll

5    ask it again.

6                     If you were to do an independent

7    investigation and not just rely on these

8    conclusions of the Department of Justice, what

9    would you do?

10                   MR. STROTH:  Objection.  It's a

11   hypothetical.

12                   MR. SCHOOP:  Yes, it is a

13   hypothetical.  You're tendering this man as an

14   expert.  Experts can and should be expected to

15   answer hypotheticals, counsel.  Please answer the

16   question, if you can, sir.

17                   MR. STROTH:  Same objection.

18   Foundation.  You can answer the question if you

19   can, if you understand it.

20   BY THE WITNESS:

21       A.    Sure.  Chicago is a big department.

22   It would require most likely and which has been

23   done as I understand it by a number of researchers

24   including a staff of the Department of Justice

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 63

```
 1   assigned to this project I would probably do it
 2   much the same way as the DOJ described their
 3   approach because for two reasons.
 4                        One is they have done this many
 5   times throughout the country and it works.  In
 6   particular, I was very close to the LAPD
 7   Department of Justice review and the Inglewood
 8   Department of Justice review.  So I think it's --
 9   I'll use the term bulletproof in terms of fairness
10   and completeness.  So I would follow those --
11   those protocols.  Now -- and it would have to
12   be -- it would have to occur with the deficiencies
13   acknowledged in the system itself because the
14   data -- I'll wait for -- are you ready?
15   BY MR. GREEN:
16        Q.     Mm-hmm.
17        A.     The data is -- source is the
18   department itself.  One of the problems as stated
19   in this report is if I do not want the question --
20   if I do not want the answer, I will not ask the
21   question and if I do not want to memorialize the
22   problem, I will not keep the data and those are --
23   that's -- those are two hurtles that have to occur
24   which I saw significantly occurred with these
```

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 64

1    reports.  So I'll wait for the question, next

2    question.

3            Q.     Well, what specifically would you do

4    to come to these conclusions in the way of

5    investigating the data that the Department of

6    Justice had?

7            A.     I --

8            Q.     What protocols are there that you

9    are referring to?

10           A.     Well, I would be -- first, you

11   identify who your sources are, how much of them

12   exist, if at all, what you would need.  You would

13   get experts on statistics.  You would have workers

14   that would develop a database.  Hopefully you

15   would use computers.  You would tap into what

16   exists if it exists at all what's called an EWS,

17   early warning system.

18                         I would reference you to the

19   Kolts Commission and the Christopher Commission

20   study, which is extensive.  Rodney King riot, my

21   last riot, I had a platoon under my command in

22   that riot and the Christopher Commission Report is

23   very good because it -- what he did was able to

24   delve into the personnel files.  So it would be --

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 65

1    there were 7,000 personnel files by the way in the

2    LAPD.

3                         They sorted through every one of

4    them and all of the complaints that existed in the

5    record and identified a certain group of officers

6    that were responsible for the majority of the

7    complaints and they statistically weighed them and

8    then he identified recommendations that this is a

9    springboard for EWS.  So I think that approach was

10   good.  I think that's typically what -- how the

11   DOJ report starts out, but it's very significant

12   min- -- delving into everything available that can

13   be reviewed and placed in a database.

14        Q.    Have you developed your own

15   methodology for reviewing Monell claims?

16              MR. STROTH:  Ob- -- that's fine.

17   BY THE WITNESS:

18        A.    My own methodology?  No, I don't

19   have any particular one other than I don't try to

20   re-plow the ground that's been plowed when it

21   appears valid and as you know you have a rather

22   renown professor that's been involved in this for

23   years, you have the DOJ, you've got other reports.

24   They have all come to the same conclusion.  When

Electronically signed by Steven Brickey (501-307-281-8473)                    954cbfef-baad-48a4-9690-8c9024c19f87

Page 66

1    you see that, then you have a very substantial

2    support of the conclusions and that's what I tried

3    to express in my report.

4    BY MR. GREEN:

5        Q.    Now, the details you've described

6    earlier like the Christopher Report methodology,

7    what you believe the DOJ did, you personally did

8    none of that in this particular case, did you?

9              MR. STROTH:  Objection.  Foundation.

10   BY THE WITNESS:

11       A.    I did not do that.

12   BY MR. GREEN:

13       Q.    Now, on page 17, you also talk about

14   your fees?

15       A.    Page 17?

16       Q.    Yes, 17 at the end.  You have travel

17   time at the rate of $50 an hour; travel via

18   automobile to/from San Diego to Los Angeles eight

19   hours $400; all case review consulting and writing

20   of expert opinions, such as Rule 26 reports, at

21   $250 per hour; all testimony, either trial or

22   deposition, $350 an hour with a two-hour minimum

23   required, is that a fair and accurate description

24   of your billing rates in this case?

Electronically signed by Steven Brickey (501-307-281-8473)                954cbfef-baad-48a4-9690-8c9024c19f87

Page 67

1    A.    It's not accurate in terms of the

2  billing rate for this case.  I capped the billing

3  for the case up to today at $3,500.

4    Q.    Is that a flat fee?

5    A.    Well, it certainly has exceeded at

6  the rate of $250 an hour, the $3,500, but I capped

7  it at that pending if there is a trial and then

8  I'll charge the $350 and, of course, the travel

9  expenses and so forth will be charged and will be

10  charged during trial time as well.

11    Q.    So how many hours and how much have

12  you charged in this case so far to date?

13    A.    Well, I've charged $3,500 and

14  nothing further up to today, plus the airfare,

15  which is right at something like $1,100 and hotel

16  has been provided, meals have been provided.  So

17  just travel back to the airport.  That will be it

18  until and if there is a trial, then there will be

19  travel again and $350 for the time on the stand

20  and, of course, the deposition time here typically

21  under the Federal Rules would fall on the City,

22  but I understand they're taking care of it.  So it

23  would be the $350 for the hours here.

24    Q.    Now, if there is a result in favor

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 68

1    of plaintiff at the trial, do you expect to charge

2    for all those extra hours that you were not paid

3    for yet?

4         A.    No, it's -- I would be -- regardless

5    of the outcome, my time on the stand I will charge

6    for.  Other than that, no.

7         Q.    So have you been paid the $3,500?

8         A.    Yes.

9         Q.    And just curious, what percentage of

10   your income presently is derived from your expert

11   witness work?

12        A.    It would be right at two-thirds of

13   my income and the other third is my retirement.

14        Q.    That's your pension from the

15   sheriff's office?

16        A.    Yes.

17        Q.    And, Mr. Clark, did you actually

18   write each portion of this report that has been

19   marked Exhibit 4 or were there certain portions

20   that were prewritten that you reviewed and

21   approved?

22        A.    There were some that were prewritten

23   that I approved.

24        Q.    And, if so, which -- which portions

L.A. Court Reporters, L.L.C.
312-419-9292

Page 69

1    were prewritten and by whom?

2         A.    Oh, my goodness.  Well, they -- I

3    think the best way to say this, collaborative with

4    Mr. Odim.  Nothing from Mr. Stroth.

5         Q.    Mr. Odim, you're talking about your

6    counsel with you today?

7         A.    Yeah.  Well, he's my client.  He is

8    not representing me, but he is representing the

9    plaintiff.  Plaintiff's counsel.  So let me see.

10   I vetted with him the listing of material

11   reviewed, the overview of events.  Actually, I

12   took out of statements you see there is heavy in

13   quotes.  Mr. Odim pointed me to IPRA statements,

14   which I plugged in.  And then it was -- you see

15   some similarities with McIntosh on opinions and

16   then -- and then my qualifications, as I said,

17   always appears in my reports.

18        Q.    Now, when you say similarities,

19   they're, in fact, virtually identical to the Lane

20   opinions, the last list of opinions in that case,

21   is that correct?

22              MR. ODIM:  Objection.

23   BY THE WITNESS:

24        A.    They're -- they're not exact and

L.A. Court Reporters, L.L.C.
312-419-9292

Page 70

1    they're not -- but I think the paragraph, the

2    Department of Justice investigation is I think

3    almost word for word because it's accurate.

4    BY MR. GREEN:

5         Q.      And they -- they were drafted by

6    Mr. Odim for you?

7         A.      No.

8              MR. STROTH:  Objection.

9    BY THE WITNESS:

10        A.      No, it was collaborative.  And we --

11   we worked together on it.  He made suggestions and

12   then the opinions was closely collaborative.  The

13   footnote is his that he provided to me.

14   BY MR. GREEN:

15        Q.      Now, is this -- that's -- one last

16   note on this -- on the bottom here.

17              MR. STROTH:  Of what page?

18              MR. GREEN:  Of page eight of 17.

19              MR. STROTH:  Mm-hmm.

20   BY MR. GREEN:

21        Q.      This is the ultimate report about

22   failures of the Chicago Police Department's

23   pattern and practice, what -- what footnote --

24   where is that referring to?

L.A. Court Reporters, L.L.C.
312-419-9292

Page 138

1    orders or even state law?

2         A.     Because the general orders require

3    an investigation and the investigation doesn't

4    meet the requirement.

5         Q.     And the City of Chicago also has an

6    independent citizen review authority.  They're now

7    called the independence Civilian Office of Police

8    Accountability, correct?

9         A.     Yes.

10        Q.     What about other large cities like

11   New York or Los Angeles, they don't have full-time

12   civilian investigative bodies, do they?

13        A.     They have policies and procedures,

14   some of which are wanting, and others that are

15   good.  I can give you some examples.

16        Q.     But they don't have an independent

17   review authority like Chicago, do they?

18        A.     The City of Los Angeles has a police

19   commission that serves as an independent authority

20   and New York has a very fine policy established by

21   Bratton when he was the commissioner and it's

22   generally well done.

23        Q.     Again, this opinion three in the

24   Lane case, that covered the period 2009 to 2015,

Electronically signed by Steven Brickey (501-307-281-8473)          954cbfef-baad-48a4-9690-8c9024c19f87

Page 139

1    has there been anything to change your opinion in

2    this case in regard to the time period here from

3    2010 to 2016?

4         A.    No.

5         Q.    Opinion four.  You say "These

6    failures impede the conduct of complete, fair and

7    unbiased investigations of police misconduct and

8    lead to foreseeable risk of harm to others and are

9    things that a reasonable Chicago policymaker would

10   be aware of."

11                  What is the factual basis to

12   support that it impedes the conduct of complete,

13   fair and unbiased investigations, these failures?

14        A.    What occurred here in this case, and

15   I cited them, and I could give you a better

16   example I think in particular to this case and --

17        Q.    I'm sorry.  Is that referring to

18   those first four elements you -- you cited

19   regarding the investigation?

20        A.    No, the entirety of the report.  I

21   know we're going through it step-by-step, but the

22   entirety of the report is reflective to that and

23   so it was never intended for these to be totally

24   standalone statements and the -- there was another

Electronically signed by Steven Brickey (501-307-281-8473)                954cbfef-baad-48a4-9690-8c9024c19f87

Page 140

1    part -- answer to your question.

2                    And the impairments as I already

3    stated and I started to give you an example of the

4    mother who comes in to complain about the beating

5    of her son and they require the affidavit are --

6    are known to be clear impairments to any police

7    administrator and how they ever crept their way

8    into Illinois's law I think is -- is interesting,

9    would be an interesting historical review.

10          Q.      That is the law nonetheless?

11          A.      It is the law and I think as stated

12   by the Department of Justice commentary in their

13   report that there are a number of things that

14   somehow become part of the agreement between the

15   police league and the City, et cetera, that now

16   stand in the way of a -- of a good investigative

17   process in police involved shootings.

18          Q.      And you're -- you're referring to

19   the Collective Bargaining Agreement?

20          A.      Yes, I think that probably -- as

21   stated by the Department of Justice that there are

22   some real problems with that and that that

23   authority or that ability to make a policy needs

24   to be restored back into the City.

L.A. Court Reporters, L.L.C.
312-419-9292

Electronically signed by Steven Brickey (501-307-281-8473)                954cbfef-baad-48a4-9690-8c9024c19f87

Page 141

1       Q.      So your opinions in this regard are

2    totally based upon what you read in the DOJ

3    report?

4       A.      The DOJ report and the other -- can

5    we agree that when I say DOJ all of the

6    foundational articles and reports that -- that

7    agree one way or another with the findings that I

8    cited in my report?

9       Q.      Your --

10      A.      The collective --

11      Q.      The 48 items and the DOJ report

12   conclusions?

13      A.      Right, which I think are a very

14   excellent recount of what the problems are.

15      Q.      What is your factual basis as they

16   lead to foreseeable risk of harm to others?

17      A.      Because when a person gets the

18   notion that they can act with impunity, then harm

19   follows.  Ergo, the differences between the NORSAT

20   and the SIS unit, the LAPD SIS unit is a good

21   example.

22      Q.      Do you have any training in

23   psychology?

24      A.      I'm the father of ten children.

Electronically signed by Steven Brickey (501-307-281-8473)                    954cbfef-baad-48a4-9690-8c9024c19f87