# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESTATE OF PIERRE LOURY, Deceased, by Tambrasha Hudson, Administrator, | ) ) ) ) |
| Plaintiff, | ) Case No. 16-cv-4452 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| CITY OF CHICAGO, Chicago Police Officers, Officers SEAN HITZ (Star No. 6272), | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tambrasha Hudson, who is the administrator of the estate of Pierre Loury, filed a nine-count Second Amended Complaint alleging unconstitutional seizure under 42 U.S.C. § 1983, a *Monell* claim under 42 U.S.C. § 1983, and a series of state law claims against the City of Chicago and Chicago Police Officer Sean Hitz in August 2018. The City moves for partial summary judgment [118] on the *Monell* claim against the City. The City also moves to bar the opinion testimony of plaintiff's retained expert Roger A. Clark [122]. For the reasons set forth below, the City's motion to bar the expert opinion testimony is granted. This Court denies the City's motion for summary judgment.

**Evidentiary Issues**

Before setting forth the factual background, the Court resolves evidentiary issues raised by the parties.

The U.S. Department of Justice issued a report in January 2017 ("DOJ Report") following an investigation of the Chicago Police Department ("CPD") and the Independent Police Review Authority ("IPRA"). Similarly, plaintiff submits an April 2016 Police Accountability Task Force

1

Report ("PATF Report") prepared by a task force appointed by Chicago Mayor Rahm Emanuel that reviewed the CPD's data and concluded that Chicago's police accountability system is broken. Plaintiff relies on the reports to support her *Monell* claim, highlighting sections concerning the adequacy of investigation, discipline, and supervision of use-of-force complaints; failure to discipline officers when the victims of use of force are African-American; and the existence of a "code of silence." The City contends that the reports are inadmissible hearsay within hearsay and should be excluded.

Plaintiff offers the DOJ Report and the PATF Report for the truth of their contents, relying on the hearsay exception in civil cases for "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). Such "findings can take the form of an evaluative report containing both opinions and conclusions." *Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016). Evaluative reports of this nature are presumed admissible in a civil case. *Id.* If a party seeking to exclude the report demonstrates a lack of trustworthiness of the report, a court has discretion to exclude it. *Id.* (citing Fed. R. Evid. 803(8)(B)).

The City contends that the DOJ Report should be excluded as untrustworthy because it was issued shortly before a change of DOJ administration, the City was not given the opportunity to comment on the report before it was finalized, the Attorney General has not adopted the report by filing suit against the City, and the report does not identify certain parameters relevant to the report findings.

This Court easily finds the City's reasons insufficient to bar the DOJ Report and that the report meets the standard for admissibility. The Department of Justice ("DOJ") conducted its investigation in accordance with its authority under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d. (Dkt. 130-

3 at 5.) The DOJ prepared the report based on reviewing documents provided by CPD, the IPRA, and the City, including policies, procedures, training plans, department orders and memoranda, and internal and external reports, meeting with community members, community organizations, and City officials, and interviewing current and former CPD officers and IPRA investigators. (*Id.* at 6.) The DOJ Report was timely for this case; DOJ published the report in January 2017 and considered incidents between January 2011 and April 2016. In addition to a team of attorneys, paralegals, outreach specialists, and data analysts from the Civil Rights Division of the DOJ and the U.S. Attorney's Office for the Northern District of Illinois, eleven independent subject-matter experts assisted with the investigation. These experts are primarily current or former law enforcement officials from police departments across the country. (*Id.*)

The City also objects to consideration of the PATF Report, contending that the report is inadmissible hearsay within hearsay and that it is inadmissible evidence of subsequent measures pursuant to Federal Rule of Evidence 407. Because the City did not raise its Rule 407 objection until its reply, it has waived this objection. *See United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009). Like the DOJ Report, the PATF Report is admissible under Rule 803(8)(A)(iii), as the report includes factual findings made by a public office resulting from a legally authorized investigation. The task force formed five working groups that were made up of a diverse range of 46 Chicagoans that included professionals and subject matter experts, such as those in police training, civil rights and mental health, as well as elected officials, faith leaders, and community activists. (Dkt. 130-2 at 12.) The task force interviewed more than 100 national and local experts and citizens of Chicago of all ages and hosted four community forums that more than 750 people attended. (*Id.* at 13.) That the task force included some non-governmental personnel is beside the point; what matters is whether the task force was a public body vested with authority to investigate the issues under consideration, which it was.

The Seventh Circuit has found similar reports admissible in support of *Monell* claims. *See, e.g., Daniel*, 833 F.3d at 740–42; *Dixon v. County of Cook*, 819 F.3d 343, 348–49 (7th Cir. 2016). Further, at least one other district court has already held that this same DOJ Report and PATF Report are admissible. *See Simmons v. City of Chicago*, No. 14-CV-9042, 2017 WL 3704844, at *8 (N.D. Ill. Aug. 28, 2017) (Kennelly, J.). Other courts have held analogous DOJ reports admissible under Rule 803(8). *See, e.g.*, *Barr v. City of Albuquerque*, No. 12-CV-01109-GBW/RHS, 2014 WL 11497833, at *3 (D.N.M. Aug. 22, 2014) (DOJ report concerning Albuquerque Police Department admissible under Rule 803(8)(C)); *Martinez v. Cook Cty.*, No. 11-CV-1794, 2012 WL 6186601, at *4 n.7 (N.D. Ill. Dec. 12, 2012) (Kendall, J.) ("[C]ourts have found Department of Justice letters of this exact type, when relevant, admissible under the Federal Rule of Evidence 803(8)."). Although the City also contends that the DOJ Report is inadmissible because this exception does not apply to the inner layer of hearsay, the City fails to point to specific instances in the report that it purports are hearsay. Without further detail, this Court does not find that aspects of the report are inadmissible on this basis. The ability to present specific objections in pre-trial motions is not precluded.

The City further contends that plaintiff's Rule 56.1(b)(3)(C) statement improperly combines numerous statements in one paragraph, which violates Local Rule 56.1(b)(3)(C). (Dkt. 146 at 1.) In relevant part, Local Rule 56.1(b)(3)(C) states that a party opposing summary judgment may submit "a statement, consisting of short numbered paragraphs, of any additional facts." Although each of the challenged paragraphs contains several facts that, standing alone, could have supported a single paragraph, the paragraphs do not frustrate the "purpose of Rule 56.1," which "is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). While

perhaps not as lean as they could have been, the paragraphs that the City challenges are sufficiently "clear" and "concise" to pass muster.

Further, the City objects that ¶¶ 9, 10, 19, and 22 of plaintiff's Rule 56.1(b)(3)(C) statement contain new and undisclosed facts. Plaintiff responds that each of these paragraphs include already alleged facts and disclosed evidence. For example, ¶ 19 cites to the DOJ Report and the PATF Report as evidence, which the City does not claim were undisclosed. The Court finds that these facts are not new in such a way that warrants that this Court not consider them. The City further objects to ¶ 22, arguing that an interview with IPRA Chief Sharon Fairley is inadmissible pursuant to Federal Rule of Evidence 407 because it reflects subsequent remedial measures. The Court does not rely on this evidence in denying summary judgment; however, the Court denies this objection without prejudice and reserves the right to consider this issue again in pretrial motions. Finally, the City objects to a few paragraphs of plaintiff's Rule 56.1(b)(3)(C) statement as not material. (Dkt. 146 ¶¶ 23–25.) These paragraphs are relevant to the Court's consideration of causation for the *Monell* claim, so the objections are overruled.

**Background**

While the parties dispute many of the specifics regarding the events that gave rise to this suit, the following core narrative is undisputed: On April 11, 2016, Officers Sean Hitz and Richard Riordan were on duty as Chicago Police Officers and responded to a call of "shots fired" that went out over the police radio. A chase ensued that ended with Officer Hitz firing two fatal shots that resulted in the death of plaintiff's decedent, Pierre Loury.[1] (Dkt. 130 ¶¶ 4–5, 10.)

At the time of Loury's death, the CPD had in effect General Orders G03-02, G03-02-01, and G03-02-02. These orders provided guidance for the use of force when an officer believed force was reasonably necessary and guidance regarding the appropriate amount of force to use. (Dkt. 130

---

[1] The parties agree that the specifics of Loury's death are disputed, so the Court does not delineate those disputes here.

¶¶ 19–22.) The parties dispute whether training for police officers regarding the use of deadly force was flawed. Plaintiff cites findings from the DOJ Report that the "Academy training on deadly force—an important topic, given our findings regarding CPD's use of force—that consisted of a video made decades ago, which was inconsistent with both current law and CPD's own policies." (Dkt. 146 ¶ 11.) The City's witness Andrea Hyfantis testified that the City teaches police officers about constitutional standards for the use of deadly force in the police academy. (Dkt. 130 ¶ 34.) Officer Hitz testified that he was aware that it would be wrong to shoot someone who did not present a threat to him. (*Id.* ¶ 37.) Plaintiff disputes whether Officer Hitz's testimony reflects his perception regarding how his shooting of Loury would be handled, citing to conclusions in the DOJ Report and the PATF Report, including that "Chicago's police accountability system is broken." (Dkt. 146 ¶ 16.) There is a genuine issue of material fact regarding whether CPD police officers actually expected to be held accountable for their use of deadly force if they did not comply with CPD protocol.

The parties agree that the IPRA investigates each use of deadly force. However, the parties dispute whether the IPRA's investigative techniques were independent and whether the IPRA investigations were also impacted by the CPD *de facto* culture. Government investigations, including the DOJ Report and the PATF Report, have found that a code of silence exists within CPD. (Dkt. 130 ¶ 35.) The City is aware of these reports. (Dkt. 146 ¶ 4.) Still, the City disputes many of the findings of these reports, including through the expert opinion testimony of its expert Jeffrey Noble. Roger Clark is plaintiff's retained expert regarding the City's policies, practices, and customs. Clark testified that he was not an independent investigator of the cases discussed in the DOJ Report and did not talk to anyone at DOJ about how they arrived at their conclusion. (Dkt. 130 ¶ 30.)

The City now moves to bar plaintiff's expert Roger Clark as a witness and for summary judgment on plaintiff's *Monell* claims.

6

## I. Motion to Bar Expert Testimony

**Legal Standard**

As gatekeeper, the court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Four factors are pertinent as the Court assesses whether to admit expert testimony: (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521–522 (7th Cir. 2013) (citing Fed. R. Evid. 702; *Smith v. Ford Motor Co.*, 215 F.3d 713, 717–19 (7th Cir. 2000)).

To determine if a witness qualifies as an expert, the Court looks at the witness's "full range of practical experience as well as academic or technical training." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). The Court must also determine if the proposed testimony is reliable by examining the expert's methodology. *See Smith*, 215 F.3d at 718. Finally, the Court considers whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal citations and quotations omitted). Although the Court may hold a hearing to determine the admissibility of an expert's testimony, a hearing is held at the discretion of the Court. *See C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 838 (7th Cir. 2015) (affirming exclusion of expert opinions without a hearing). The parties do not request a hearing, and the Court does not find a hearing necessary to determine the qualifications of the expert at issue in this motion.

**Discussion**

The City moves to bar the testimony of Roger Clark, plaintiff's proffered *Monell* expert on investigations, discipline, training, and the code of silence. The City argues that Clark's proffered opinions are inadmissible because: (1) he lacks the foundation to be considered an expert for *Monell* purposes; (2) his opinions regarding plaintiff's use of force expert Ronald Scott are beyond the scope of his area of retention; and (3) he lacks a reliable methodology to create a foundation for his opinions about CPD's policies, customs, and practices. Plaintiff asserts that Clark is amply qualified to testify as an expert regarding plaintiff's *Monell* claim based on his extensive experience in law enforcement, including administration, management, training, crime scene investigation, and supervision. Plaintiff further responds that Clark utilizes Scott's results to arrive at his own opinions, which is an appropriate basis for an expert opinion. Finally, plaintiff contends that Clark relied on various materials, including the DOJ Report, for which he explained how the DOJ employed a reliable methodology.

This Court finds that Clark does possess the requisite knowledge, skill, and experience to render opinions as a *Monell* expert. Clark worked for the Los Angeles County Sheriff's Department for 27 years, holding the ranks of deputy sheriff, sergeant, and lieutenant. While Clark held a wide range of administrative and supervisory positions during his career, it is notable that Clark served on the training staff of the Los Angeles County Sheriff's Department's Patrol School, which taught officers proper investigation, interview, and apprehension methods, and Clark sat on the Departmental Review Committee investigating allegations of unreasonable use of force by police officers. Clark also served as a lecturer on use-of-force techniques to the department's Reserve Academy. Since his retirement 26 years ago, Clark has served as an expert witness on issues related to police practices and investigative procedures.

However, these qualifications alone do not make Clark's opinions admissible. His opinions must also assist the jury in determining a factual issue. Clark's opinions regarding plaintiff's expert Ronald Scott's conclusions regarding the underlying April 11, 2016 shooting (Dkt. 122-1 at 5–7), will not accomplish that objective. Clark does not add his own opinion, but rather seeks to draw his own factual conclusions regarding competing evidence in this case. Contrary to plaintiff's contention, Scott's opinions are not factual assumptions that Clark can opine upon. Instead, this portion of Clark's report represents an improper attempt to render credibility determinations of conflicting testimony from Scott and Officer Hitz and between the version of events offered by Officer Hitz and Officer Riordan. It is not the role of an expert witness to "sort out possible conflicting testimony or to argue the implication of those inconsistencies." *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) (Cole, M.J.). It is the jury's role to draw conclusions from the testimony it hears, not a second expert. *See Stachniak v. Hayes*, 989 F.2d 914, 925 (7th Cir. 1993). Usurping that role is improper and would not be helpful to the jury. Further, Clark's report points to no proper scientific or experience-based method by which he has arrived at his conclusion that the shooting was different than reported by Officer Hitz. As such, Clark's opinions regarding the shooting are improper and are barred from any consideration, including at summary judgment and trial.

Finally, Clark also must have reliably applied principles and methods to the facts of the case to support his *Monell* opinions. The City contends that Clark's opinions lack a reliable methodology to create a foundation for these opinions. Specifically, the City argues that Clark provides no clear reasoning in this instance for how he arrived at his opinions and he conducted no investigation himself, instead relying on the DOJ Report and the PATF Report without evaluating the processes used therein. Plaintiff responds that Clark reviewed various materials, including the DOJ Report, the PATF Report, and several other studies.

The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). However, reliability primarily is "a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). Here, then, the critical inquiry examines whether there exists a connection between the data considered and the opinion offered in this case. *Id.* Where the opinion is connected to the underlying data by only the *ipse dixit* of the expert, it is properly excluded under Federal Rule of Evidence 702. *Id.*; *C.W. ex rel. Wood*, 807 F.3d at 837.

Despite plaintiff's argument, the relevant issue in this case is not that the underlying reports are inadmissible evidence. Indeed, this Court already determined that the DOJ Report and the PATF Report are clearly admissible. Rather, the inadequacy of Clark's opinions in this case is his analysis of the reports and the methodology used in creating them. An expert witness must rely on his own expertise in reaching his opinions and may not simply repeat the opinions of others. Clark testified that he was not an independent investigator of the cases discussed in the DOJ Report and did not talk to anyone at DOJ about how they arrived at their conclusion. To allow Clark to convey the findings of the DOJ and PATF reports without examining the processes employed in those reports and parrot those findings as his own opinion about the practices of the City transforms Clark's opinion into an amplifier of those reports without adding additional value for the jury's consideration.

Plaintiff cites *Grant v. Chemrex, Inc.*, No. 93-CV-0350, 1997 WL 223071 (N.D. Ill. Apr. 28, 1997) (Marovich, J.) for the premise that reliance on reports like the DOJ Report and the PATF Report is typical for experts in Clark's field. Plaintiff cannot contend with a straight face that regurgitating the findings of primary reports without independent analysis is required by the nature

of his expert opinions.  Indeed in another case before this Court, Clark collected data from hundreds of investigations from which he opined that there was an existing custom and practice pertaining to the unconstitutional use of deadly force.  *See Giles v. Ludwig*, No. 12-CV-6746, 2014 WL 12775459, at *2 (N.D. Ill. Aug. 29, 2014) (Coleman, J.).  The Court held that Clark's opinions in that case were proper because Clark analyzed a large body of data and detailed the process and methodology that he used.  *Id.*  The process Clark undertook in *Giles* stands in stark contrast to Clark's admission here that he did not conduct an investigation nor assess the process used in the reports he relied upon.

The City likens Clark's report to the observations regarding police made by the proposed *Monell* expert in *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013 (N.D. Ill. 2011) (St. Eve, J.).  In *Obrycka*, the proposed expert used his "general observations and opinions on policing" to formulate sweeping opinions regarding the CPD, despite never preparing independent research to familiarize himself with the CPD and having no policing experience himself.  792 F. Supp. 2d at 1021. Although Clark has significant policing experience, he also did not prepare independent research or examine the basis for the investigative processes employed in preparing the DOJ Report and the PATF Report.  Although Clark has used a reliable methodology in the past, the process used in forming the opinions in this case does not pass muster under Rule 702.

For the above reasons, the City's motion to bar the expert opinion testimony of Clark is granted.

## II.     Partial Motion for Summary Judgment

**Legal Standard**

Summary judgment is proper when the pleadings, the discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

11

322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). In determining whether or not a genuine issue of material fact exists, this Court must view the evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Discussion**

A municipality can be held liable under 42 U.S.C. § 1983 if a constitutional deprivation was caused by the municipality's own policy or custom. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). A plaintiff can demonstrate the existence of an unconstitutional policy or custom by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the loss. *Id.* For the purposes of this motion, the City does not dispute that plaintiff has presented sufficient evidence concerning the underlying alleged constitutional violation to proceed to trial, given the factual disputes surrounding Loury's death. However, the City asserts that with plaintiff's supplemental response to the City's interrogatory number 10, plaintiff has withdrawn a portion of her complaint such that plaintiff no longer alleges the requisite elements of *Monell*. In the alternative, the City argues that plaintiff has failed to demonstrate evidence of an unconstitutional policy or custom.

Plaintiff does not dispute that she withdrew paragraph 37 of her Second Amended Complaint. However, she responds that withdrawing a single paragraph of her complaint does not "equate[] to a wholesale withdrawal of the *Monell* claim." (Dkt. 131 at 4.) Plaintiff points to the numerous other paragraphs of her complaint that allege that CPD's widespread and unwritten *de facto* policies, practices, and customs led to a code of silence and failure to properly hire, train, supervise, and discipline Chicago police officers. Moreover, plaintiff's claim that these policies are

12

the moving force behind and the direct and proximate cause of the injuries to Loury are well documented by evidence such that a reasonable jury could use to find in plaintiff's favor. Plaintiff has not abandoned her *Monell* claim.

To demonstrate that the City is liable for a harmful custom or practice, plaintiff must show that the City "action was taken with deliberate indifference as to its known or obvious consequences." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997). Further, plaintiff must show a "direct causal link" between the City's actions and the constitutional violation. *Id.* at 404. Although "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability," plaintiff must demonstrate that a policy, rather than a random event, is at issue. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). A policy may also be demonstrated by an implicit policy or a gap in expressed policies. *Id.*

Plaintiff contends that the CPD has a code of silence and *de facto* policy of failing to properly investigate and discipline officers involved in misconduct, including police shootings of civilians. Plaintiff agues that the *de facto* policy and code of silence are evidenced and caused by CPD's actions that: (1) allow police officers to create false statements regarding a shooting incident by failing to address efforts to conceal misconduct as a serious infraction; (2) failure to establish a policy regarding foot pursuits despite a pattern and practice of police officers engaging in foot pursuits that result in the use of excessive, deadly force; (3) the PATF Report finding that police shootings of civilians are disproportionately inflicted on black citizens, which prompted the IPRA to investigate all closed officer-involved shooting incidents; and (4) the City fails to use the data it collects regarding officer performance recognition, complaints, and lawsuits to identify trends, including with respect to misconduct complaints and training deficiencies.

The City responds that plaintiff's claims are based entirely on plaintiff's expert Roger Clark's testimony and report. Even if this Court had not found Clark's expert opinion testimony inadmissible, the Court would find his report of little value because it did not show how his conclusions were derived from his expertise. Nonetheless, this Court finds that that the materials that Clark reviewed, including the DOJ Report and the PATF Report, constitute stand-alone, admissible evidence in support of plaintiff's *Monell* claims.

As noted, "a plaintiff cannot ultimately prove a *Monell* claim at trial based on only his own case or even a handful of others." *Daniel*, 833 F.3d at 742. This requires a systematic assessment of the CPD, which is precisely what the DOJ Report and the PATF Report intend to accomplish. Those reports deserve considerable weight. Despite the City's arguments that the CPD General Orders provided protocol regarding the use of deadly force and that the IPRA investigates all uses of deadly force by a police officer, a reasonable jury could find that these reports show that the actual practices of the CPD deviate from these protocol. *See id.* at 740–41 (findings in a final DOJ report regarding the Cook County Jail "go a long way toward meeting a plaintiff's burden of proving an unconstitutional custom, policy, or practice under *Monell*"). When viewed in the light most favorable to plaintiff, the admissible reports, along with other evidence from the record, demonstrate that there is a genuine issue of material fact as to the existence of a pervasive code of silence and other *de facto* policies within the CPD from which it may be inferred that the City knew police officers were violating constitutional rights of civilians and did nothing. The Court finds that there is enough evidence for a reasonable jury to find that the City was deliberately indifferent towards the code of silence and related practices.

Finally, this Court considers whether the code of silence and *de facto* policies were the moving force behind Officer Hitz's shooting of Loury. The City maintains that plaintiff's assertions of how the City's *de facto* policies and code of silence proximately caused his injury are speculative. Plaintiff

14

responds that there is ample evidence that allows a reasonable jury to conclude that the City's widespread practices and customs caused the excessive use of deadly force in this case. When a City's custom facilitated the constitutional deprivation, the City is responsible under § 1983. *See Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 928 (7th Cir. 2004). Where the "causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 991 (N.D. Ill. 2017) (Leinenweber, J.).

Here, there is a genuine issue of material fact as to whether Officer Hitz's account of the shooting conflicts with other evidence and whether the City's investigation failed to collect and properly analyze evidence that contradicted Officer Hitz's account. Moreover, the reports, among other evidence, are sufficient for a reasonable jury to find that there was a "direct causal link" between the City's deviation from its established policy and Loury's death. *See Brown*, 520 U.S. at 404; *see also Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 917 (N.D. Ill. 2016) (Feinerman, J.). Viewing the evidence in the light most favorable to plaintiff, the Court concludes that a reasonable jury could find that Officer Hitz's decision to shoot Loury was caused by a belief that he was impervious to consequences due to CPD's willingness to tolerate a code of silence and failure to investigate.

Therefore, genuine disputes of material fact foreclose the City's entitlement to summary judgment on plaintiff's *Monell* claims. Accordingly, the Court denies the City's partial motion for summary judgment.

**Conclusion**

Based on the foregoing, this Court grants the City's motion to bar the expert opinion testimony of Clark [122]. The City's partial motion for summary judgment [118] is denied.

IT IS SO ORDERED.

Date: 3/11/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge