IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF PIERRE LOURY, Deceased, by Tambrasha Hudson, Administrator, ) ) ) ) Plaintiff, ) ) v. ) ) CITY OF CHICAGO, Chicago Police ) Officer SEAN HITZ, ) ) Defendants. ) | Case No. 16-cv-4452 Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tambrasha Hudson, the administrator of the Estate of Pierre Loury, brings constitutional and state law claims against defendant Chicago Police Officer Sean Hitz and a *Monell* claim against the City of Chicago. Defendant Hitz has moved to bar the testimony of Hudson's gunshot residue expert Ronald Scott pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the following reasons, the Court, in its discretion, denies Officer Hitz's motion.

**Factual Background**

On April 11, 2016, defendant Officer Hitz and non-defendant Officer Richard Riordan were on duty as Chicago police officers when they responded to a call of "shots fired" that went out over the police radio. As the officers were driving southbound on Homan Avenue, individuals informed them that a person in a black sedan traveling northbound on Homan Avenue had fired the shots. The officers then followed the black sedan. After the sedan turned west on Roosevelt Road, Officer Riordan initiated a traffic stop. When the sedan came to a stop, the decedent Pierre Loury, who was sixteen-years-old at the time, exited the front passenger door and ran northbound through a vacant alley. Officer Hitz immediately pursued him. After Loury ran through the alleyway, he reached a

fence and began to climb over it. Shortly thereafter, Officer Hitz fired two shots at Loury resulting in his death.

**Expert Opinions**

Hudson's expert, Ronald Scott, provides the following opinions regarding the gunshot residue ("GSR") found on Loury:

> The presence of GSR particles on Pierre Loury could have originated from his being in the presence of a gunshot including two gunshots fired by Officer Hitz.
>
> The presence of GSR particles on Pierre Lowry could have been transferred through the contact of Officer Riordan handcuffing him after having had his firearm out. Any GSR present on Officer Riordan's firearm either from prior shooting (i.e. range qualification), and the presence of GSR in his holster would likely be on his hands which then contaminate the hands of Pierre Loury through direct contact.
>
> The failure to properly preserve the hands at the scene prior to his movement to the hospital is an egregious violation of evidence preservation and protection and constitutes contamination.
>
> Therefore, the GSR results are based on failure to properly protect and preserve evidence, likely contamination resulting therefrom, and it cannot be excluded that the GSR results are from the gunshots of Officer Hitz or by transfer contact from Officer Riordan while handcuffing the victim.

(R. 201-1, 8/15/17 Scott Expert Report, at 19.)

**Scott's Qualifications**

Scott has testified as an expert witness over 300 times in the areas of firearms ballistics, shooting reconstruction, and shooting dynamics, among other topics, in both federal and state courts. *See, e.g., Calta v. North Am. Arms, Inc.,* Case No. 05-cv-1266, 2007 WL 4800641 (M.D. Fla. Nov. 27, 2007); *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011). As an independent forensic consultant, he has provide services to the United States Military, engineers, insurance companies, attorneys, prosecutors, authors, and architects. Scott has master's degrees in Management, Business Administration, and Criminal Justice. His bachelor's degree is in Law Enforcement and he has an associate's degree in Science. Throughout his career, Scott has engaged in extensive technical and

forensic training, including training in crime science investigation, firearms, and ballistic materials research and testing. Scott also served in the United States Army where he received training in small arms and explosive ordinance reconnaissance.

Scott was employed as a police deputy by the Massachusetts State Police ("MSP") for more than 25 years before retiring and becoming an expert in firearms, ballistics, and police shootings. During his time with the MSP, he served in the "Ballistics Section" and was the commanding deputy of the MSP's ballistics laboratories. In that role, Scott conducted, supervised, and trained personnel in forensic investigations, shooting reconstruction, and the dynamics involved in shooting incidents. In addition, Scott was a member of the MSP Firearms Review Board, which evaluated departmental deputy-involved shooting incidents. Scott has investigated over 400 police-involved shootings and has personally conducted thousands of forensic investigations, attended approximately 700 post-mortems, and was trained in the forensic interpretation of gunshot wounds from a shooting reconstructive perspective.

Also, Scott has been involved in a number of forensic science organizations, including the Association of Firearms and Toolmark Examiners. He was a voting member of the American Academy of Forensic Sciences Standards Consensus Board on Firearms and Tool Marks. Scott has given lectures and presentations at Harvard University, Northeastern University, Boston University, American Academy of Forensic Sciences, as well as at police academies.

## LEGAL STANDARD

Rule 702 and *Daubert* require district judges to act as gatekeepers to ensure that proposed expert testimony is both reliable and relevant. *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). When determining reliability, the Court's role is to assess whether the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *Id.* The Court's focus is on the expert's methodology, not his conclusions. *Kopplin v.*

3

*Wisconsin Central Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

A district court's gatekeeping evaluation of expert testimony does not take the jury's place in deciding the issues of accuracy or credibility. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 438 (7th Cir. 2019). Indeed, once the district court determines that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596). The expert's proponent has the burden of establishing the admissibility of his opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

## ANALYSIS

Officer Hitz first argues that Scott is not qualified to offer his opinions regarding gunshot residue. Specifically, Officer Hitz takes issue with the fact that Scott does not have a college degree in the physical sciences like chemistry or physics. Officer Hitz also points out that Scott does not list gunshot residue analysis in his areas of expertise on his curriculum vitae and that he has no education or experience in the area of forensic science.

Pursuant to Rule 702 and *Daubert*, courts ask whether an expert is qualified to answer specific questions, not just whether an expert is generally qualified. *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019). And, this expertise comes not just from formal education, but can be based on knowledge, skill, training, or education. *United States v. Brown*, 973 F.3d 667, 703 (7th Cir. 2020). When law enforcement officers testify as experts, they usually bring a wealth of experience and make important connections for jurors based on their specialized knowledge. *See United States v. Wehrle*, 985 F.3d 549, 553 (7th Cir. 2021).

Under this standard, whether Scott has a college degree in a physical science is not dispositive nor is the fact that Scott did not specifically list an expertise in gunshot residue analysis on his curriculum vitae. Meanwhile, Officer Hitz's broad statement that Scott has no education or experience in the area of forensic science simply ignores Scott's 40 plus years of ballistics and weapon training and experience, including that he conducted and supervised forensic investigations.

The Court thus turns to whether Scott has sufficient expertise involving gunshot residue analysis and whether the gunshot residue analysis results were based on the failure to properly protect and preserve evidence. The Court first notes that Scott has testified about gunshot residue analyses in other cases, including in the criminal matters, *Arizona v. Ramone Trammel*, Maricopa County Court, and *West Virginia v. Charles Kennedy*, McDowell County Court. Similarly, Scott has testified about the spoliation and alteration of evidence in the civil lawsuit, *Scott v. Bullets & Burgers*, Clark County, Nevada. Moreover, Scott's extensive experience in crime scene investigations coupled with his firearm and ballistics expertise underscores his knowledge in the area of evidence collection and gunshot residue. Although Scott has not worked as a chemist in a laboratory examining the gunshot particles expelled from a firearm, he has abundant experience and training to discuss the results of gunshot residue testing.

Next, the Court examines Officer Hitz's argument that Scott did not use reliable reasoning or a scientific methodology in forming his opinions. Scott's reasoning and "methodology" in coming to his conclusions is based on his observations in relation to the specialized experience that he has garnered over the last 40 years. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). In other words, it is not essential that law enforcement experts follow a scientific method in forming their opinions. *See United States v. Parkhurst*, 865 F.3d 509, 516 (7th Cir. 2017).

5

Here, Scott based his gunshot residue opinions on documentation concerning the crime scene and the Illinois State Police's ("ISP") Gunshot Residue Testing documents, including the swabbing of Loury's hands and the ISP's final report. He also reviewed photographs taken at the hospital after Officer Hitz shot Loury. After analyzing these reports, Scott connected them to his opinion by describing the absence of documentation on the preservation of Loury's hands from contamination prior to the collection of the gunshot residue. His analysis was independent and not merely a regurgitation of the ISP's documents or report. Scott's expert opinions are thus reliable.

Officer Hitz next contends that Scott's opinion testimony will not be helpful to the jury because it "mirrors" the ISP chemist Ellen Chapman's report, and thus would be cumulative. Although Chapman concluded that Loury either discharged a firearm, had contact with a gunshot residue-related item, or had both hands in the environment of a discharged firearm, Scotts' opinions are more developed and include the opinion concerning the proper preservation of the gunshot residue evidence. As such, his opinions will be help the jury make important connections.

Last, the Court rejects Officer Hitz's argument that the preservation of evidence opinion would be prejudicial to him because he does not sufficiently explain how it would be unfairly prejudicial under the standard set forth in Rule 403. *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (perfunctory and undeveloped arguments are waived).

**Conclusion**

Based on the foregoing, the Court, in its discretion, denies Officer Hitz's motion to exclude the gunshot residue expert testimony of Ronald Scott.

Date: 2/25/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge