IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF PIERRE LOURY, Deceased, by Tambrasha Hudson, Administrator, | )<br>)<br>) |
| Plaintiff, | )  Case No. 16-cv-4452<br>)<br>)  Judge Sharon Johnson Coleman |
| v. | )<br>) |
| CITY OF CHICAGO, and Chicago Police Officer SEAN HITZ, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tambrasha Hudson, the administrator of the Estate of Pierre Loury, brings constitutional and state law claims against defendant Chicago Police Officer Sean Hitz and a *Monell* claim against the City of Chicago. Hudson has moved to bar the testimony of the City's police practices expert Jeffrey Noble pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the following reasons, the Court, in its discretion, grants in part and reserves ruling in part on certain aspects of Hudson's *Daubert* motion.

**Factual Background**

On April 11, 2016, defendant Officer Hitz and non-defendant Officer Richard Riordan were on duty as Chicago police officers when they responded to a call of "shots fired" that went out over the police radio. As the officers were driving southbound on Homan Avenue, individuals informed them that a person in a black sedan traveling northbound on Homan Avenue had fired the shots. The officers then followed the black sedan. After the sedan turned west on Roosevelt Road, it pulled over and Officer Riordan initiated a traffic stop. When the sedan came to a stop, the decedent Pierre Loury, who was sixteen-years-old at the time, quickly exited the front passenger

door and ran northbound through a vacant alley. Officer Hitz immediately pursued him. After Loury ran through the alleyway, he reached a fence and began to climb over it. Shortly thereafter, Officer Hitz fired two shots at Loury resulting in his death.

**Expert Qualifications**

Noble has his undergraduate degree in criminal justice from California State University and a juris doctor degree from Western State University College of Law. In 2012, he retired as the deputy chief of police of the Irvine, California police department after 28 years of service. As a police officer, Noble worked a variety of assignments, including patrol, narcotics, training, internal affairs, and SWAT. He has published two textbooks on policing and has made presentations on policing issues at the Academy of Criminal Justice Sciences Annual Meeting, the International Association of Chiefs of Police Conferences, and at the Carnegie Endowment for International Peace Symposium. As a consultant, Noble has worked with numerous police organizations in a wide range of police practices, including criminal and administrative investigations. He has been retained as an expert for both plaintiffs and defendants in over 140 cases and has testified in state and federal courts.

**Expert Opinions**

In the present motion, Hudson challenges the following opinions set forth in Jeffrey Noble's expert report:[1]

- The Chicago Police Department ("CPD") had reasonable policies consistent with generally accepted police practices regarding police officer ethics, untruthfulness, and mandatory reporting of allegations of fellow officer misconduct during the period between 2011-2016.

- The administrative investigations into allegations of officer misconduct conducted by the City of Chicago's Office of Professional Standards ("OPS"), Independent Police Review Authority ("IPRA"), and the Bureau of Internal Affairs ("BIA") were reasonable.

---

[1] Because the Court granted defendants' *Daubert* motion as to Hudson's police practices expert, Roger Clark, the parties agree that Noble's opinions about Clark's expert report are no longer relevant.

2

- The City of Chicago enhanced its ability to conduct investigations when it formed the IPRA in 2007 and the Civilian Office of Police Accountability ("COPA") in 2016.

- Independent civilian oversight is not the rule of American policing, but rather the exception.

- The standard for investigating police misconduct is reasonableness.

- Noble's disagreement with the findings of the Police Accountability Task Force Report ("PAFT"), the McGuire Woods Report, and the Safer Report.

- Noble's opinions disagreeing with the January 2017 Department of Justice ("DOJ") Report and the shooting investigation cases provided to the DOJ.

- There is no evidence that the CPD has a systemic failure in disciplining its officers who engage in misconduct.

- There is no evidence that there is a widespread, pattern, practice, or custom that Chicago police engage in a code of silence to protect fellow officers from allegations of wrong doing.

- There is no evidence that the CPD failed to train its officers regarding the use of force.

- Officer Hitz knew there would be consequences if he engaged in constitutional violations.

- No reasonable CPD officer could believe that they could act inappropriately with impunity and that nothing would happen.

- Any alleged *Monell* violation could not have been the moving force behind Officer Hitz's use of force.

## LEGAL STANDARD

Rule 702 and *Daubert* require district judges to act as gatekeepers to ensure that proposed expert testimony is both reliable and relevant. *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). When determining reliability, the Court's role is to assess if the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *Id.* To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

3

A district court's gatekeeping evaluation of expert testimony does not take the jury's place in deciding the issues of accuracy or credibility. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 438 (7th Cir. 2019). Once the district court determines that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596). The expert's proponent has the burden of establishing the admissibility of his opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

## ANALYSIS

Hudson does not challenge Noble's qualifications. Instead, she argues that many of Noble's opinions are not reliable. In determining reliability, a "critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the *ipse dixit* of the expert,' that is properly excluded under Rule 702." *Manpower, Inc. v. Insurance Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013) (quotation omitted). The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

*Noble's Opinions on Reasonableness of CPD Policies and Investigations*

The Court first turns to Noble's opinion that the CPD had reasonable policies consistent with generally accepted police practices regarding police officer ethics, untruthfulness, and mandatory reporting of allegations of fellow officer misconduct during the years 2011-2016. In her motion, Hudson asserts that although Noble states that he read the policies and that they are reasonable under the accepted standards, Noble does not explain how he arrived at his conclusion

4

that "these are the types of policies and programs that are recommended in policing literature." The Court agrees.

Although Noble is unquestionably qualified to offer opinions about police practices, he gives little more than his subjective impressions as to the CPD's policies in this first opinion. *See Brown v. Burlington N. Santa Fe Ry. Co.,* 765 F.3d 765, 772 (7th Cir. 2014) ("Rule 703 requires the expert to rely on "facts or data," as opposed to subjective impressions."). Instead of identifying the generally accepted police practices standards and then explaining how the CPD's policies are reasonable under these standards, Noble jumps to the conclusion that they are reasonable. There is no dispute that "expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful," *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013), but Noble fails to make a connection between the applicable professional standards and the CPD's policies and investigations. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Noble's mere citation in a footnote to articles about certain police codes of ethics does not sufficiently explain the professional standards Noble purportedly applied.

Noble also offers the opinion that the administrative investigations into allegations of Chicago police officer misconduct conducted by OPS, IPRA, and BIA were reasonable. By way of background, before September 2007, OPS had the responsibility for investigating misconduct complaints against Chicago police officers. In September 2007, the City removed OPS from the Chicago Police Department and reorganized it as a separate department, namely, the IPRA, which reported directly to Chicago's mayor. In 2016, the Civilian Office of Police Accountability ("COPA") replaced IPRA. Because OPS ceased to exist over four years prior to Loury's shooting, whether OPS's investigations were reasonable is not temporally relevant to Hudson's *Monell* claim because Noble opines that between 2011 through 2016 the CPD took reasonable steps. Likewise,

5

Noble's review of the complaint register files ("CR files") of police misconduct that occurred as early as 2004 through 2010 cannot form the basis of his opinion for the years 2011 through 2016.

Equally important, Noble does not describe how he reached his conclusions. For Noble's opinion to be reliable, he needs to show how his expertise and experience led to his conclusions in more than conclusory terms. He sets forth what OPS, IPRA, and BIA did in their investigations, but generally states these investigations were "reasonable" without specifically setting forth why they were reasonable and what standards he used in coming to this conclusion. Last, the City's argument that Hudson never establishes that Noble's opinions were unreliable fails to recognize that the City, not Hudson, has the burden of showing that Noble's opinions are admissible. The Court grants Hudson's motion as to Noble's second opinion.

Noble's next opinion is that the City of Chicago enhanced its ability to conduct investigations when it formed the IPRA in 2007 and COPA in 2016. As discussed, what happened in 2007 is not temporally relevant to Hudson's *Monell* claim. More importantly, Noble's conclusion is not reliable because he merely discusses how IPRA and COPA were formed without connecting the information he recites to his conclusion about the quality or enhancement of the City's ability to conduct reasonable investigations. His opinion is merely a "bottom line" based on a recitation of how IPRA and COPA were formed and what they do. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Turubchuk v. So. Ill. Asphalt Co., Inc.*, 958 F.3d 541, 554–55 (7th Cir. 2020) (citation omitted). The Court therefore grants Hudson's motion to bar this opinion.

*Noble's Opinions on Civilian Oversight and Standard for Police Investigations*

Hudson further challenges Noble's opinions that independent civilian oversight is not the rule of American policing, but rather the exception, and that the standard for investigating police misconduct is reasonableness. Whether independent civilian oversight is the rule and not the

6

exception will not be helpful to the jury because this information would not aid the jury in resolving factual disputes. *See Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 819 (7th Cir. 2014). Therefore, the Court grants this aspect of Hudson's motion. The Court also grants Hudson's motion to bar Noble's opinion that the standard for investigating police misconduct is "reasonableness" because Noble fails to provide any authority or a reliable basis for this bare-boned conclusion.

*Noble's Opinions on Reports*

In his expert report, Noble gives opinions about certain aspects of the Safer Report, the Police Accountability Task Force ("PATF") Report, and McGuire Woods Report. To give context, the Safer Report, entitled "Preventing and Disciplining Police Misconduct," was written in December 2014 by Ron Safer, then a managing partner of Schiff Hardin. As to the PATF report, in December 2015, former Chicago Mayor Rahm Emanuel created a task force to review the CPD's systems of accountability, oversight, and training that were in place at that time. The PATF then published its report in April 2016. The McGuire Wood Report is an analysis of the IPRA's investigations into officer-involved shootings. This report was performed at the IPRA's request and completed in March 2017.

In her *Daubert* motion, Hudson argues that most of Noble's opinions selectively portray portions of these reports in the best light for defendants. The Court agrees with Hudson that in reaching certain conclusions, Noble has improperly invaded the jury's role. *See Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) (Cole, J.). Nonetheless, as discussed in the Court's January 25, 2021 order granting in part and denying in part the City's motions in limine, until the parties narrow the focus of what portions of these three reports they seek to admit into evidence, the Court reserves ruling on this aspect of Hudson's *Daubert* motion.

Hudson also seeks to bar Noble's opinions related to the January 2017 Department of Justice ("DOJ") report entitled "Investigation of the Chicago Police Department." Prior to issuing

7

its report, the DOJ reviewed 170 officer-involved shootings and sought the assistance of 11 independent subject-matter experts in arriving at their conclusions. The focus of the DOJ's investigation was on the role of racial, ethnic, and other disparities in the CPD's use of force, and the CPD's systems of accountability. After its investigation, the DOJ concluded that the CPD had deficient accountability systems that contribute to CPD's pattern or practice of the unconstitutional use of force.

Noble criticizes the DOJ report because the DOJ did not share the identity of any of the subject-matter experts, the level of review of the 170 files concerning officer shootings, and the factual basis for the conclusions. Noble characterizes the DOJ's flaws as a lack of transparency that undermines the report and its findings. As the Court explained in its January 25, 2021 ruling on the City's motions in limine, because Hudson has not specifically designated which portions of the 162-page DOJ report she seeks to present at trial, the Court reserves its ruling on this section of Hudson's *Daubert* motion. The Court cautions the parties that any attempt to have mini-trials or trials within the trial in order to dissect these reports would be confusing to the jury. *See Henderson v. Wilkie*, 966 F.3d 530, 538 (7th Cir. 2020).

*Noble's "No Evidence" Opinions*

Hudson argues that certain opinions invade the province of the jury by opining on the conclusion the jury will be asked to reach. Under Rule 704(a), however, "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Hamilton v. County of Madison, Ill.*, 970 F.3d 823, 829–30 (7th Cir. 2020). Nevertheless, Noble has set forth opinions that weigh evidence, which does invade the jury's role. *See Davis,* 277 F.R.D. at 370. In particular, Noble opines: (1) there is no evidence that the CPD has a systemic failure in disciplining its officers who engage in misconduct; (2) there is no evidence that there is a widespread, pattern, practice, or custom that Chicago police engage in a code of silence to protect fellow officers from allegations of wrong doing; and (3) there

8

is no evidence that the CPD failed to train its officers regarding the use of force.

In forming these opinions that absolutely "no evidence" exists, Noble rejected evidence in the record supporting Hudson's *Monell* claims that undermine his opinions without discussion, and thus he weighed the evidence in favor of the City. Not only did Noble invade the role of the jury by weighing evidence, he failed to connect the dots between the evidence he analyzed and the opinion that no evidence exists. To say that "no evidence" exists also has the strong possibility of creating juror confusion. *See* Fed.R.Evid. 403; *Davis*, 277 F.R.D. at 369. The Court grants Hudson's motion as to Noble's "no evidence" opinions.

*Noble's State of Mind Opinions*

Hudson further takes issue with two of Noble's opinions that she characterizes as speculative evidence about CPD officers' state of mind, namely, Officer Hitz knew there would be consequences if he engaged in constitutional violations, and no reasonable CPD officer could believe that they could act inappropriately with impunity and that nothing would happen. As to the opinion about Officer Hitz's state of mind, because Officer Hitz is testifying at trial on this subject, Noble's expert opinion would be cumulative and not helpful to the jury. *See Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 608 (7th Cir. 2000).

Hudson next argues that Noble's opinion that no reasonable CPD officer could believe he could act with impunity is speculative and lacks a foundation. The Court agrees. Although "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience," *Kumho Tire Co.*, 526 U.S. at 156, Noble does not cite to any case-specific evidence nor explain the method he used to come to this conclusion. *See Perez v. K & B Transp., Inc.*, 967 F.3d 651, 656 (7th Cir. 2020). Instead, he relies on his general conclusions, including his "no evidence" opinions. Without more, Noble's conclusion is unreliable. As such, the Court grants

9

Hudson's motion to bar Noble's opinion that no reasonable CPD officer could believe that they could act inappropriately with impunity and that nothing would happen.

*Noble's Legal Opinion*

Last, the Court grants Hudson's motion as to Noble's opinion that "any alleged *Monell* violation could not have been the moving force behind Officer Hitz's use of force" because it is a legal conclusion. Although "[e]xpert opinions on ultimate issues are not categorically impermissible," *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017), "Rules 702 and 704 'prohibit experts from offering opinions about legal issues that will determine the outcome of a case.'" *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (citation omitted); *see also Jimenez*, 732 F.3d at 721 ("an expert may not offer legal opinions"). Whether the City's policies or practices are a moving force behind Officer Hitz's use of force is a necessary element of Hudson's *Monell* claim, and thus it is a legal issue that is outcome determinative. *See Calderone v. City of Chicago*, 979 F.3d 1156, 1163 (7th Cir. 2020).

**Conclusion**

Based on the foregoing, the Court, in its discretion, grants in part, denies in part, and reserves ruling on certain aspects of Hudson's motion to exclude the police practices expert testimony of Jeffrey Noble [207].

Date: 3/17/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge